65 N.J. Super. 112 (1961)
167 A.2d 211
JOHN A. SOKOLAY, PLAINTIFF-APPELLANT,
v.
MAX EDLIN AND FRANCIS E. HUMISTON, BOTH INDIVIDUALLY AND AS PARTNERS TRADING AS EDLIN'S PHARMACY, AND PHILIP WITTCOFF, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1960.
Decided January 16, 1961.
*118 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. William W. Wimmer argued the cause for appellant.
Mr. Robert J. McCurrie argued the cause for respondents Max Edlin and Francis E. Humiston (Mr. Saul G. Schulter, attorney).
Mr. Stephen F. Lichtenstein, Deputy Attorney General, argued the cause for respondent Philip Wittcoff (Mr. David Furman, Attorney General, attorney).
The opinion of the court was delivered by COLLESTER, J.S.C. (temporarily assigned).
The plaintiff John A. Sokolay appeals from summary judgments entered in the Superior Court, Law Division, in favor of the defendants.
Suit was instituted by the plaintiff in four counts, the first count of which has been abandoned. In the second count plaintiff charges that the defendants, Max Edlin and Francis E. Humiston, defamed the plaintiff by publishing a defamatory oral statement which, by innuendo set out in the count, charged that plaintiff had stolen certain demerol tablets. In the third count plaintiff charges the defendant Philip Wittcoff with malicious interference with plaintiff's employment causing his discharge. In the fourth count plaintiff charges the defendants Edlin, Humiston and Wittcoff with an unlawful conspiracy to cause plaintiff's discharge.
None of the defendants filed affidavits with the trial court in support of their motions for summary judgments. They chose to rely on the pleadings, depositions, interrogatories and the testimony of the plaintiff taken before the court during a preliminary hearing on the issue of express malice.
The plaintiff, a registered pharmacist, was employed as a part-time manager and pharmacist at Edlin's Pharmacy in North Arlington, New Jersey, which was owned and *119 operated by the defendants, Max Edlin and Francis E. Humiston, as partners.
In June 1958 a shortage of approximately 2,200 demerol tablets, a narcotic, was discovered in the pharmacy inventory. The defendant Philip Wittcoff, a sergeant of the New Jersey State Police, was assigned to investigate. During the course of the investigation Wittcoff questioned the owners and employees of the pharmacy, including the plaintiff, and on July 15, 1958 polygraph tests were taken voluntarily by the plaintiff, the defendant Humiston, and two pharmacist internes, Ronald Green and Richard Diehl, with negative results.
Plaintiff states in the pretrial discovery proceedings that on July 15, 1958, following his lie detector test, Wittcoff endeavored to persuade him to confess to the theft of the demerol tablets and made various threats in the course thereof, one of which was that he would have the plaintiff discharged.
A month later, on August 15, 1958, after the daily closing hour of the pharmacy, the defendant Edlin discharged the plaintiff by stating to him:
"I am convinced that you are responsible for the missing demerol tablets. I am also going to find out who else is implicated in it with you. Because of this, I have got to let you go."
Plaintiff states that these words were spoken by Edlin in the presence of Humiston, Ronald Green and one Frank Weber, who was employed as a part-time delivery and clean-up man by the pharmacy.
In his letter opinion granting summary judgments in favor of the defendants Edlin and Humiston, the trial judge stated that the words spoken by Edlin were not spoken with malice and were not actionable. He further stated that the circumstances under which the words were spoken justified their use and explained the reason for plaintiff's discharge.
R.R. 4:58-3 provides that summary judgment may be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show palpably *120 that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." The burden is on the moving party to exclude all reasonable doubt as to the existence of any genuine issue of fact. All inferences of doubt are drawn against the movant in favor of the opponent of the motion, and the papers supporting the motion are closely scrutinized and the opposing papers indulgently treated. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954). The motion should be cautiously granted. Bouley v. Borough of Bradley Beach, 42 N.J. Super. 159, 168 (App. Div. 1956). It should not be used for a trial of disputed facts upon affidavits, ibid. Furthermore, it has been said:
"* * * in any case where the subjective elements of willfulness, intent or good faith of the moving party are material to the claim or defense of the opposing party, a conclusion from papers alone that palpably there exists no genuine issue of material fact will ordinarily be very difficult to sustain. The telltale factor of demeanor in the presence of the trier of fact often assumes such vital importance in such cases that the opposing party should generally not be denied the opportunity to have the moving party, or its officers, appear on the witness stand before the trier of fact." Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J., at p. 76.
If the pleadings and answers to interrogatories and affidavits filed in support of and in opposition to the motion show the existence of a genuine question of fact which, if proven, would establish the plaintiff's right to recovery on the issues joined by the complaint and answer, and such question of fact can be established by evidence in the form of depositions, interrogatories, affidavits and admissions which would be evidential on the trial, the trial court may not grant summary judgment. If no such question of fact can be established on the record, the motion may be granted. Shiddell v. Electro Rust-Proofing Corp., 34 N.J. Super. 278, 282-283 (App. Div. 1954).
*121 Motions for summary judgment do not admit all the well-pleaded facts in a complaint. Summary judgment is not to be denied if other papers pertinent to the motion show palpably the absence of any issue of material fact, although the allegations of the pleadings, standing alone, may raise such an issue. Summary judgment procedure pierces the allegations of the pleadings to show that the facts are otherwise than as alleged. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J., p. 75. Thus, the plaintiff's own papers may indicate that the facts are otherwise than alleged in the complaint.
In the count alleging slander, plaintiff relies upon the fundamental rule that where spoken language is of such a character as to make the slander actionable per se, a suit will lie without proof of special damages. Restatement of Torts, sec. 570, p. 170 (1938). Cf. Bock v. Plainfield Courier-News, 45 N.J. Super. 302 (App. Div. 1957). Various types of statements may constitute slander per se. One who falsely, and without privilege to do so, publishes a slander which imputes to another conduct constituting a criminal offense is liable to the other, without proving special damages, if the offense charged is of a type which, if committed in the place of publication, would be chargeable by indictment. Restatement of Torts, sec. 570, p. 170, sec. 571, p. 171 (1938); Shaw v. Bender, 90 N.J.L. 147 (E. & A. 1916). If the language used charged the plaintiff with either larceny of the demerol tablets or a violation of the Uniform Narcotics Law, R.S. 24:18-1 to 49, there is no doubt it would be slanderous per se. This is likewise the case where the unavoidable implication of the language is that a crime has been committed. Jorgensen v. Pennsylvania R. Co., 38 N.J. Super. 317, 343 (App. Div. 1955); Murphy v. Johns-Manville Products Corp., 45 N.J. Super. 478, 488 (App. Div. 1957). Furthermore, one who falsely and without a privilege to do so publishes a slander which ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, *122 trade, or profession is liable for slander per se. Restatement of Torts, sec. 570, p. 170, sec. 573, p. 177 (1938); Mick v. American Dental Ass'n, 49 N.J. Super. 262, 274 (App. Div. 1958).
Before the issue of whether a statement is slanderous per se is reached, it must be determined whether the statement is slanderous or actionable. The court below was of the opinion that the statement here in issue was not actionable as a matter of law.
It is the function of the court to determine in the first instance whether the alleged defamatory words are reasonably capable of a particular interpretation. If they are unambiguous and open only to a single interpretation  whether a defamatory or non-defamatory meaning  the court makes that determination as a matter of law. If the language is ambiguous and is reasonably open to two meanings, one innocent and the other defamatory, then it is for the jury to determine as a question of fact which meaning was understood by those to whom the publication was made. Mick v. American Dental Ass'n, supra, 49 N.J. Super., p. 274; Leers v. Green, 24 N.J. 239, 253, 255 (1957); Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 430 (App. Div. 1958); Mosler v. Whelan, 28 N.J. 397 (1958). The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express. Restatement of Torts, sec. 563, p. 147 (1938).
We are of the opinion that the finding by the trial court that Edlin's statement was not defamatory as a matter of law was in error. It would be reasonable to interpret Edlin's statement as imputing to the plaintiff the theft of the demerol tablets. The word "responsible" is at least ambiguous in the context. Use of the word "implicated" also reinforces the conclusion that one reasonable interpretation of the language is that it imputed a theft to the plaintiff, and that the recipients of the statement so undersood it. Reasonable men might legitimately differ as to how the recipients *123 understood Edlin's statement. Under these circumstances, it could not be found non-actionable as a matter of law.
Even if the language did not imply a theft by the plaintiff, it might still be actionable as a slanderous imputation affecting plaintiff in his profession as a pharmacist. This is a question over which reasonable men might differ and upon which judgment should not be rendered as a matter of law.
We find that it was error for the court below to enter summary judgment against the plaintiff on the ground that the language used did not constitute slander which was actionable per se. A genuine issue of fact existed as to whether the language used was actionable and, if so, whether it was actionable per se. The complaint and answer raised this issue. Plaintiff's testimony on preliminary hearing, the depositions and the interrogatories did not settle this issue of fact. In effect, the court erroneously undertook to decide it on motion for summary judgment. A jury question was presented as to the meaning to be given to the oral statement.
Of course, if the words used were privileged by reason of the circumstances under which they were spoken, summary judgment was proper irrespective of whether the language was actionable per se. The trial court apparently rested its conclusion on the non-actionable nature of the language, thus never reaching the question of privilege, although it did note that the use of the words was justified under the circumstances. The question of privilege was properly raised below and defendants raise it in this appeal.
It is axiomatic that
"A communication `made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable'; the `fundamental test is the bona fides of the communication,' and it is not privileged when the person making it has `full *124 knowledge of its untruthfulness.' * * *" Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 375-376 (1959); Lawless v. Muller, 99 N.J.L. 9, 12 (Sup. Ct. 1923).
The defendant has the burden of establishing the existence of a privileged occasion for the publication by proving a recognized public or private interest which would justify the utterance of the words. The existence of privilege is basically a question of law for the court, subject to the exercise of the jury's traditional function where the facts are in dispute. Coleman v. Newark Morning Ledger Co., supra, 29 N.J., p. 376.
The defense of privilege arises in those situations in which the public interest in permitting persons to speak or write freely without being restrained by the possibility of a suit for defamation outweighs the policies behind the law of defamation which imposes broad liability for the publication of false matters tending to injure the reputation of others. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 557 (1955). In these situations the courts recognize the defense of privilege; privilege which may be absolute or qualified. The difference is that absolute privilege affords complete protection, whereas the qualified privilege affords protection only if there is no ill motive or malice in fact. Rainier's Dairies v. Raritan Valley Farms, Inc., supra, p. 558. The privilege which defendants here assert is a qualified privilege.
The communication was made in the presence of two employees of defendants' store. As co-employees, these individuals had sufficient interest in the communication which discharged plaintiff to raise a qualified privilege. In Ramsdell v. Pennsylvania R. Co., 79 N.J.L. 379, 381 (Sup. Ct. 1910), a notice was distributed to all conductors stating that plaintiff was discharged for failure to issue meal checks according to instructions. The court found this statement libelous per se. Nonetheless, it held that the communication was privileged as to the employees of the dining car department. The court felt that these employees should properly *125 be informed of the severance of relations between the company and one of its conductors. See also Murphy v. Johns-Manville Products Corp., 45 N.J. Super. 478, 479 (App. Div. 1957); Jorgensen v. Pennsylvania R. Co., supra.
There can be little doubt but that the communication sub judice was privileged. All those present were affiliated with the pharmacy  Humiston, the co-defendant and part owner, Ronald Green, the pharmacist interne  both of whom had been under investigation  and Frank Weber, a part-time employee. In addition, a common interest was supplied by the police investigation in which several of the employees were involved. Plaintiff does not seriously contest the fact that the communication was subject to a qualified privilege. Rather, he seeks to show an abuse of privilege and a destruction of privilege by express malice, or at least that a genuine issue of fact exists as to these claims.
Once the existence of privilege is established, the burden is on plaintiff to prove its abuse by excessive publication, either by use of the occasion for an improper purpose, or by lack of belief or grounds of belief in the truth of what was said. Prosser on Torts (2d ed. 1955), sec. 95, p. 629; Murphy v. Johns-Manville Products Corp., supra, 45 N.J. Super., p. 493; Restatement of Torts, sec. 599 et seq., pp. 263 et seq. (1938). Publication to the part-time deliveryman cannot defeat the privilege. This publication did not exceed the bounds of qualified privilege; it was as a matter of law well within reason. Plaintiff has not met its burden of proof by showing that the part-time deliveryman had no common interest. He worked two nights a week and knew of the theft of the demerol tablets. There is no affirmative evidence indicating that he was not also subject to investigation. His interest was sufficient to prevent destruction of the qualified privilege. This was not a case of an unnecessary publication to an unprivileged person. No genuine issue of fact was presented in this regard.
Plaintiff next contends that the words were spoken although *126 they were known to be false. The only evidence sustaining this contention is defendants' answer to one of plaintiff's interrogatories. Question and answer are set forth below:
"Q. Do the defendants Edlin or Humiston, or either of them believe that the plaintiff stole, wrongfully took or is responsible for the missing demerol tablets?
A. These defendants do not have sufficient facts upon which to base any conclusive belief as to plaintiff's involvement. However, the tablets disappeared at times during which plaintiff was in charge of the pharmacy premises and such disappearance has not been explained." (Emphasis added)
Manifestly, defendants had reasonable grounds to believe the allegedly defamatory matter to be true. Therefore, the privilege could not be destroyed for lack of such grounds. See Restatement of Torts, sec. 601, p. 265 (1938); Coleman v. Newark Morning Ledger Co., supra, 29 N.J., p. 376, and authorities there cited. It remains to be considered whether the communication was made with "full knowledge of its untruthfulness." Lawless v. Muller, 99 N.J.L. 9 (Sup. Ct. 1923). Surely, the answer to the interrogatory does not establish that the communication was made with knowledge that it was false, to say nothing of "full knowledge." It merely states that defendants lacked "conclusive" evidence upon which to ground their belief. The answer on which plaintiff relies is insufficient to raise a genuine issue of fact as to defendants' knowledge that the communication was false. And this despite the admonition that summary judgment should rarely be granted where issues of subjective intent, such as good faith and belief, are involved. Judson v. Peoples Bank & Trust Co. of Westfield, supra. It must be remembered that plaintiff had the burden of showing the privilege was abused. This burden has not been met. No genuine issue of fact exists.
It must be concluded that a qualified privilege did exist and that it was not abused by excessive publication to an unprivileged person or by defendants' lack of belief in the *127 truth of the communication, or lack of reasonable grounds for believing its truth.
The next question for determination is  Was summary judgment erroneously granted because a genuine factual issue was raised with respect to the express malice of the defendants in making the communication?
Malice in fact is required to overcome a qualified privilege. Coleman v. Newark Morning Ledger Co., supra, 29 N.J., p. 374. Many recent decisions contain extensive discussions of the meaning of the word "malice" in connection with defeat of a qualified privilege. See, e.g., Coleman v. Newark Morning Ledger Co., supra, pp. 373-375; Murphy v. Johns-Manville Products Corp., supra, 45 N.J. Super., pp. 494-495; Jorgensen v. Pennsylvania R. Co., 25 N.J. 541, pp. 566-569 (1958). And see Fahr v. Hayes, 50 N.J.L. 275 (Sup. Ct. 1888); Restatement of Torts, sec. 603, p. 268 (1938); Prosser on Torts (2d ed.), pp. 627-628. These cases reveal that malice may mean something less than spite, ill will, or a desire to do harm for its own sake. The qualified privilege may be defeated if it is not made primarily for the purpose of furthering the interest which is entitled to protection and if defendant is moved chiefly by motives of ill will, or to accomplish a distinct objective which may be legitimate in itself but is not within the privilege. The primary motive or purpose is dispositive. Thus the existence of ill will, etc., will not defeat the privilege unless it is the primary motivating force. Coleman v. Newark Morning Ledger Co., supra, 29 N.J., p. 375.
Bearing in mind the meaning attributed to "express malice," we must consider whether a genuine issue of fact existed on this question. The privilege clothes defendants with a presumption that there was no express malice. Plaintiff has the burden of establishing that the statements complained of were made from an indirect or improper motive, and not for a reason which would otherwise render them privileged. Coleman v. Newark Morning *128 Ledger Co., supra, p. 373; King v. Patterson, 49 N.J.L. 417, 421 (E. & A. 1887). The deposition, interrogatories and testimony of the plaintiff at the preliminary hearing clearly show that the statement by Edlin was made without malice. It does not appear that the motive in making the alleged defamatory statement was other than to protect the interests of the defendants and those of the other employees.
We find no genuine issue of fact established to defeat the defense of qualified privilege. Accordingly, the summary judgment as to the defendants Edlin and Humiston on the second count is affirmed.
The remaining counts of the complaint can be considered together. In the third count plaintiff charges that defendant Philip Wittcoff maliciously coerced Max Edlin and Francis E. Humiston to discharge him from his employment. In the fourth count plaintiff charges that all three defendants, Edlin, Humiston and Wittcoff, maliciously conspired together to bring about his discharge.
In granting defendants' motions for summary judgment, the trial court found that the pleadings and pretrial discovery records showed that no genuine issue as to any material fact was raised and that based upon the facts as established the defendants were entitled to the entry of summary judgments as a matter of law.
To sustain the allegations that defendant Wittcoff maliciously interfered with plaintiff's employment there must be proof of (1) actual interference by defendant Wittcoff, and (2) the malicious nature of such interference. Louis Schlesinger Co. v. Rice, 4 N.J. 169, 181 (1950); Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 563 (1955).
The answers to interrogatories and depositions given by the plaintiff show that plaintiff's charge in the third count is based solely upon a threat Sergeant Wittcoff is alleged to have made on July 15, 1958 following plaintiff's submission to a polygraph test. Plaintiff stated that Wittcoff sought to persuade him to confess to the theft of the demerol tablets *129 and when he refused to do so threatened to go to Max Edlin and have him discharged immediately.
The discovery proceedings indicate that the plaintiff was unable to testify as to any subsequent conversation between Wittcoff and either Edlin or Humiston, or that there was such a conversation relating to his discharge.
Plaintiff's deposition shows that he maintained a friendly relation with both Edlin and Humiston until he started his suit and that he assumed Wittcoff had caused Edlin to discharge him on August 15, 1958, one month after the alleged threat.
To prove a conspiracy on the part of the three defendants as alleged in the fourth count of the complaint, there must be evidence that said defendants, either by words or deeds, did confederate to do an unlawful act, or to use unlawful means to accomplish a lawful result. Hill Dredging Corp. v. Risley, 18 N.J. 501, 514 (1955). There was no such evidence here.
Plaintiff's answers to interrogatories clearly show that the allegations contained in the third and fourth counts are based upon pure speculation and fantasy. Plaintiff contends that a reasonable inference is raised by reason of the fact that since Edlin and Humiston, owners of the pharmacy, were responsible under the law to maintain proper records of their narcotic inventory, which revealed a shortage of demerol tablets, they must have conspired with Wittcoff, who was a cousin of Edlin's wife, to cause his discharge.
It is conceded that plaintiff's employment by Edlin and Humiston was one at will and thus subject to termination with or without cause. See Jorgensen v. Pennsylvania R. Co., supra, 25 N.J., p. 554. It is undenied that Sergeant Wittcoff was assigned by his superiors to investigate the alleged theft of the demerol tablets and that his investigation was made in pursuance of his official duties as a police officer. There was no evidence revealed in the discovery proceedings that Edlin, Humiston or Wittcoff ever conferred together to discuss the ultimate discharge of the plaintiff.
*130 The mere fact that at one point early in the police investigation, Sergeant Wittcoff allegedly threatened to go to Edlin and have the plaintiff immediately discharged if he did not tell the truth, together with the fact that the officer was related to Edlin's wife, is not sufficient evidence to justify the inference plaintiff wishes the court to draw.
The scintilla rule does not apply in New Jersey. Murphy v. Johns-Manville Products Corp., 45 N.J. Super. 478, 495-496 (App. Div. 1957); King v. Jones, 47 N.J. Super. 279, 284 (App. Div. 1957). If the facts are of an insubstantial nature, a mere scintilla, "fanciful, frivolous, gauzy or merely suspicious," summary judgment may be entered against the plaintiff. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J., p. 75.
We find that the pleadings, interrogatories, deposition and testimony of the plaintiff at the preliminary hearing show palpably that no genuine issue as to any material fact is raised, and from the facts presented there is no basis for plaintiff's claim under the third and fourth counts of the complaint. Accordingly, the summary judgments entered in favor of the defendants are affirmed.