Charles B. Swartwood, J.
This is a motion by the defendants for summary judgment under CPLR 3212 to dismiss this libel action on the ground that the offending article published in the Sun-Bulletin was qualifiedly privileged under the First Amendment of the United States Constitution and under section 8 of article I ¡of the New York State Constitution.
After the argument on the original motion and submission of excellent briefs, on June 25,1974 the Supreme Court handed down its decision in Gertz v. Robert Welch, Inc. (418 U. S. 323), overruling Rosenbloom v. Metromedia (403 U. S. 29). The motion was reargued, at which time the plaintiffs requested leave to amend the complaint to allege special damages. We would grant permission to amend if the decision herein were otherwise favorable to the plaintiffs.
The newspaper article which is the subject of this action appeared in a regular column in the Sun-Bulletin known as “ Action Line ” which has a subdivision entitled “ Sounding Off ” in which letters from the public are printed on matters as to which individuals wish to voice their opinions. A college student wrote a letter to the newspaper complaining of the conditions in a local pet store with respect to how the birds in the store were kept. It stated that there was a dead duck in one cage, another cage was too small for the large cockatoo in it, that the cages were not clean and that the birds were not given enough sunlight. The author concluded that the owners should *111 either provide better conditions for the wild birds or go out of business. The letter was published almost verbatim without any investigation by the newspaper. Neither the letter nor the article mentioned the plaintiffs or their pet store by name. The plaintiffs claim that the local pet store alluded to in the article was owned by them and that the article was ‘r of and concerning ” their store.
The basis of the defendants’ motion is that the article deals with humane treatment of birds which is a subject of general or public interest and concern and therefore privileged under the doctrine of Rosenbloom v. Metromedia (supra), as adopted by the New York Court of Appeals, because no liability can arise under that doctrine in the absence of clear and convincing proof that the article was published with knowledge that it was false or with reckless disregard as to whether it was false and no such showing had been made by the plaintiffs.
Plaintiffs argue that the Rosenbloom case no longer applies and that in any event the article was published with reckless disregard for the truth. Further, it is their claim that the article does not involve a matter of public interest or concern but merely the operation of a private business.
Limitations on the" law of defamation of the States were announced by the Supreme Court in New York Times Co. v. Sullivan (376 U. S. 254), which held that public officials cannot recover for defamation under State law unless they can prove by clear and convincing proof that the defamation was published with knowledge that it was false or with reckless disregard as to whether it was false. This doctrine was extended to “ public figures ” in Curtis Pub. Co. v. Butts (388 U. S. 130) and Associated Press v. Walker (388 U. S. 130). This doctrine was then greatly broadened.to cover private individuals who become involved in matters of public or general concern by Rosenbloom v. Metromedia (403 U. S. 29, supra).
The Supreme Court, in Gerts v. Robert Welch, Inc. (418 U. S. 323, 347-349, supra), withdrew from the position the plurality took in Rosenbloom, stating: “ We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual * * * Our accommodation of the competing values at stake in defamation suits by private individuals allows the States to impose liability on the publisher or broadcaster of defamatory falsehoods on a less demanding showing than that required by New York Times. This conclusion is not based *112 on a belief that the considerations which prompted the adoption of the New York Times privilege for defamation of public officials and its extension to public figures are wholly inapplicable to the context of private individuals. Bather, we endorse this approach in recognition of the strong and legitimate state interest in compensating private individuals for injury to reputation. But this countervailing state interest extends no further than compensation for actual injury. For the reasons stated below, we hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth. ’ ’
The question then arises as to how the present law of New York has been affected by this holding that States may impose a less demanding standard of liability for libel than that required under New York Times doctrine where private individuals are concerned in matters of general or public interest. Apparently the States can adopt any reasonable standard except liability without fault. Further, the States cannot impose punitive damages without proof commensurate with the New Y\ork Times standard. The majority decision did not suggest any standard for the States to follow in Certs though Mr. Chief Justice Burgee in his dissenting opinion concludes that it may be a “ negligence ” standard. (Gerts v. Robert Welch, Inc., supra, p. 354.)
A review of New York law indicates that the Court of Appeals has adopted the Rosenbloom rule in Frink v. McEldowney (29 N Y 2d 720); Kent v. City of Buffalo (29 N Y 2d 818); Twenty-Five East 40th St. Rest. Corp. v. Forbes, Inc. (30 N Y 2d 595), and Trails West v. Wolff (32 N Y 2d 207). The First Judicial Department, in Garfinkel v. Twenty-First Century Pub. Co. (30 A D 2d 787, app. dsmd. as untimely filed 22 N Y 2d 970) appeared to have applied the New York Times standard to subjects of general public interest involving a private citizen before the Rosenbloom case was decided. Though the Gerts case permits the States to adopt standards less demanding than those required by New York Times where private individuals are involved in matters of public interest, it does not hold that States may not adhere to a more demanding standard such as that standard laid down in Rosenbloom.
We are much impressed by the plaintiffs’ argument based on the reasoning of the majority opinion in Gerts that private persons involved in matters of public or general interest who have been defamed are in a disadvantaged position to protect *113 themselves or redress the wrong than are public officials or public figures who have ready access to the news media. Were it for us to decide, we would espouse some lesser standard as permitted in Gertz where private persons are defamed. However, we cannot anticipate whether the Court of Appeals will abandon the Rosenbloom doctrine or, if it should, what standard of care it might adopt. Therefore, we are bound to adhere to the Rosenbloom rule as adopted by the Court of Appeals.
With this in mind, we must decide whether the offending article here involves a question of general public interest or concern under Rosenbloom. Here again the Gertz case points out the difficulty of determining this issue which must be done on an ad hoc basis in each case (Gertz v. Robert Welch, Inc., 418 U. S. 323, 347, supra). However that may be, we find that this article dealing with humane treatment of animals and birds, or conversely, prevention of cruelty to them, involves a subject of general public concern. “ The subject was certainly as'newsworthy as the arrest of a person for distributing allegedly obscene magazines (Rosenbloom v. Metromedia, 403 U. S. 29, 45, supra); the quality of food in the plaintiff’s restaurant (Twenty-Five East 40th St. Rest. Corp. v. Forbes, Inc., 30 N Y 2d 595); a dispute about a garbage disposal site (Frink v. McEldowney, 29 N Y 2d 720); or inaccuracies in the testing of clinical specimens by a mail-order laboratory (United Med. Labs. v. Columbia Broadcasting System, 404 F. 2d 706, cert, den. 394 U. S. 921).” (Trails West v. Wolff, 32 N Y 2d 207, 215-216, supra.) (See, also, Steak Bit of Westbury v. Newsday, 70 Misc 2d 437, 441.)
There is no evidence here that the article was published with knowledge that it was false. Though the article was published without prior information or reliance on the credibility of the source, that does not amount to 1 ‘ reckless disregard ’ ’ for the truth (Trails West v. Wolff, 32 N Y 2d 207, 219, supra). The mere failure to investigate, alone, does not establish ‘1 reckless disregard ”. (Gertz v. Robert Welch, Inc., 418 U. S. 323, 332, supra; Rosenbloom v. Metromedia, 403 U. S. 29, 56, supra.) The fact that the editor and columnist had some prior acquaintance with one of the individual plaintiffs does not show “ reckless disregard ”. Further, the fact that the requested retraction was not made does not establish the necessary element of ‘ ‘ reckless disregard” since the plaintiffs’ names did not appear in the letter which was printed (New York Times v. Sullivan, 376 U. S. 254, 286, supra). The Supreme Court, in St. Amant v. Thompson (390 U. S. 727, 731), stated that: ” These cases are *114 clear that recHess conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.” The plaintiffs have not sustained their burden of proving that the article was published with ‘ ‘ serious doubts ” as to the truth of its content.
The defendants are granted summary judgment dismissing the complaint.