135 N.J. Super. 214 (1975)
343 A.2d 105
BARBETTA AGENCY, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
THE EVENING NEWS PUBLISHING CO., INC., A NEW JERSEY CORPORATION, AND FRANK G. MEGARO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 9, 1975.
Decided June 27, 1975.
*216 Before Judges LEONARD, SEIDMAN and BISCHOFF.
Messrs. Kaufman & Kaufman, attorneys for appellant (Mr. Meyer L. Rosenthal on the brief).
Messrs. Margolis & Bergstein, attorneys for respondent Frank G. Megaro (Mr. Melvyn H. Bergstein, on the brief).
Messrs. Yauch, Peterpaul & Clark, attorneys for respondent The Evening News Publishing Co., Inc. (Mr. John H. Yauch, Jr., on the brief).
The opinion of the court was delivered by LEONARD, P.J.A.D.
Plaintiff, a licensed real estate broker, appeals from summary judgment entered in favor of defendants Evening News Publishing Co. (News) and Frank G. Megaro, a Newark councilman and state assemblyman.
*217 Suit was instituted by plaintiff charging defendants with defamation arising from the publication of an article in the News in which plaintiff along with four other brokerage agencies were accused of "block-busting." The article in question charged plaintiff with "using fear and panic techniques in urging homeowners to sell their property" and with violating certain municipal ordinances designed to discourage block-busting by regulating the size and format of "For Sale" signs.
The affidavits submitted in support of defendants' motions for summary judgment revealed that prior to the publication of the article the News had received a press release from Megaro citing widespread abuses of Newark's sign ordinances and calling for more effective enforcement of the municipality's existing safeguards against the destructive practice of real estate block-busting. Believing that the subject matter of the press release was newsworthy, the city editor of the News assigned a reporter to investigate and prepare a report. As part of the investigation, Megaro, as well as a number of other community leaders, realtors and residents were interviewed. The ordinances were examined and several of plaintiff's signs were photographed.
Megaro stated that he had issued the press release as the result of several anonymous telephone calls he had received from his constituents. The callers had voiced complaints to him concerning phone calls they had received from plaintiff urging them to sell their houses and about the nature of plaintiff's signs. When Megaro was interviewed by the newspaper in connection with his press release he related to the reporter that he had received several more complaints from his constituents concerning "both the signs and panic-arousing phone calls from realtors * * * including, particularly, the Barbetta Agency." Megaro further stated that he had personally observed several of plaintiff's signs which he believed were in violation of the ordinances.
*218 Plaintiff did not submit any affidavits in opposition to defendants' motions for summary judgment. However, in depositions plaintiff's president unequivocally admitted that certain of the agency's signs were in fact in violation of the ordinances.
Preliminarily, we note when alleged defamatory words are unambiguous and open only to a single interpretation, it is the function of the trial court to determine as a matter of law whether such words are actionable. If the words are found to possess a defamatory meaning, it becomes defendant's burden to establish the existence of a privilege that will justify the publication of the words. The existence of privilege is basically a question of law for the court, subject to the exercise of the jury's traditional function where the facts are in dispute. Once the existence of privilege is established, the burden is on plaintiff to prove that such privilege was abused. Sokolay v. Edelin, 65 N.J. Super. 112, 122-128 (App. Div. 1961).
In the instant case, there was no dispute that the statements contained in the article were defamatory or actionable. Likewise, plaintiff did not seriously contest that the communication was subject to a qualified privilege. Rather, it sought to show an abuse of privilege or at least that a genuine issue of fact existed with respect thereto.
In his letter opinion the trial judge, relying on New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and, particularly, Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), ruled as a matter of law that the News was constitutionally privileged to publish the article in question because block-busting was a matter of public concern. As to defendant Megaro, he likewise found the existence of a qualified privilege, citing Sokolay, supra. It was thus incumbent upon plaintiff to demonstrate facts that would defeat or destroy the privilege. The trial judge concluded that no such showing had been *219 made. Accordingly, summary judgment was entered in favor of defendants.
The sole question presented for our consideration is whether a genuine issue of material fact existed upon the defense of privilege asserted by each defendant.
In New York Times, supra 376 U.S. at 279-80, 84 S.Ct. at 726, the Supreme Court held that a "public official" could not recover damages for defamation unless he clearly and convincingly proved that "the statement was made with `actual malice'  that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Since the decision in New York Times, what constitutes "reckless disregard" has undergone judicial refinement. It has been defined to require "a high degree of awareness of probable falsity," Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964), or "evidence * * * that the defendant in fact entertained serious doubts as to the truth of his publication," St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).
The rule granting a constitutional privilege against liability for injury caused by the publication of an allegedly defamatory falsehood was extended to encompass "public figures" by Curtis Publishing Co. v. Butts; Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). This constitutional protection was again extended by a sharply divided court in Rosenbloom, supra 403 U.S. at 44-45, 91 S.Ct. at 1820, to include "all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous." (Emphasis supplied).
This was the status of the law at the time of the hearing on the motions for summary judgment. Thereat, plaintiff additionally conceded that the newspaper article involved matters of public concern. Thus the single issue facing the trial judge was whether the article in question was published with *220 "actual malice," as this term had been defined by New York Times and its progeny, so as to vitiate the privilege.
However, as to Megaro, the trial judge reached his conclusion upon state law. We have long recognized the existence of a qualified privilege that confers immunity upon a public official for defamation uttered in relation to matters committed by law to his control or supervision. Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 380 (1959). Moreover, it has been held in Coleman (at 375-376) and Sokolay, supra 65 N.J. Super. at 123 that:
A communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege would be slanderous and actionable; the fundamental test is the bona fides of the communication, and it is not privileged when the person making it has full knowledge of its untruthfulness.
It was this privilege that the trial judge held to protect Megaro and which he found plaintiff had failed to overcome.
Subsequent to the decision of the trial judge, but prior to the filing of plaintiff's appellate brief, the United States Supreme Court decided Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Therein the court retreated from the plurality position in Rosenbloom. The issue was whether a newspaper or broadcaster that published defamatory falsehoods about an individual who was neither a public official nor a public figure could claim a constitutional privilege against liability for the injury inflicted by these statements. The court held that the extension of the New York Times test proposed by the Rosenbloom plurality would abridge the legitimate state interest in compensating injury to private individuals to an unacceptable degree. Id. 418 U.S. at 345-46, 94 S.Ct. 2997. Accordingly, the Gertz court announced the following rule:
We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability *221 for a publisher or broadcaster of defamatory falsehood injurious to a private individual. * * * At least this conclusion obtains where, as here, the substance of the defamatory statement "makes substantial danger to reputation apparent." [at 347-48, 94 S.Ct. at 3010]
The court further held, however, that when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth ("actual malice" as formulated in New York Times), the states may not permit defamation plaintiffs to recover presumed or punitive damages, but only compensation for actual injury.
The instant case falls squarely within the intended application of Gertz. It is clear that the substance of the defamatory statement made "substantial damage to [plaintiff's] reputation apparent." In such situations, however, Gertz does not compel the courts of our state to depart from the Rosenbloom standard of liability, applied by the trial judge, when dealing with private defamation plaintiffs and matters of public concern. Rather Gertz affords us the option to fashion some lesser standard for liability, short of strict liability, in such cases. The contemplated standard is that of negligence. Id. 418 U.S. at 353-54, 94 S.Ct. 2997 (concurring opinion), 355 (dissenting opinion), 366-367 (dissenting opinion). However, if we desire to allow defamation plaintiffs to recover presumed damages, we must require them to prove that defendant acted with actual malice and not merely negligently. It is to be noted that several state courts have recently rejected Gertz' invitation to require some lesser standard of liability and have instead decided to adhere to the more rigorous requirements of the Rosenbloom standard. See Aafco Heating & Air Con. Co. v. Northwest Pub., Inc., 321 N.E.2d 580 (Ind. Ct. App. 1974); Safarets, Inc. v. Gannet Co., 80 Misc.2d 109, 361 N.Y.S.2d 276 (Sup. Ct. 1974).
For the reasons expressed infra, we conclude that in the context of the instant case it is unnecessary for us to decide whether to continue to apply the Rosenbloom doctrine or to espouse the negligence standard permitted by Gertz *222 since under either theory plaintiff has failed to make the requisite showing to defeat defendants' qualified privilege.
First, assuming without deciding that Gertz applies with equal force to private as well as media defendants,[1] we note plaintiff's utter failure up until the present time to demonstrate any facts which, if true, would indicate that either defendant acted negligently, let alone maliciously. Admittedly at the time the summary judgment motion was heard Gertz had not yet been decided and therefore plaintiff was not aware of the possibility that a showing by it of negligence on the part of defendants could suffice to defeat their asserted privilege. Nevertheless, as noted previously, plaintiff filed its appellate brief post Gertz. Therein plaintiff makes no mention of this decision. Moreover, plaintiff made no reply to defendant News' answering brief which fully treats the Gertz decision and emphasizes the total lack of any proof of negligence offered by plaintiff. Nor did plaintiff, at any time during the pendency of this appeal, seek permission from us to make an allegation of negligence or to present any facts in support thereof by affidavit or otherwise.
Furthermore, there is not a scintilla of evidence in plaintiff's pleadings, the affidavits presented by defendants to the trial court in support of their motions for summary judgment, or in the depositions that form part of the record on appeal from which we can conclude that a genuine issue of material fact exists as to whether defendants abused their privilege. On the contrary, it is uncontroverted that Megaro had personally observed plaintiff's signs and had received, not one or two, but several telephone calls from his constituents complaining of plaintiff's panic-arousing tactics. Moreover, it appears that the News conducted a thorough investigation of both the allegations contained in the press *223 release and those expressed orally to its reporter and found them to be accurate in all respects.
We are not unmindful that ordinarily negligence is a question of fact for the jury to determine. Nevertheless, in the instant case, despite ample opportunity to do so, plaintiff has not even asserted negligence let alone presented any facts to support such an assertion. We therefore hold that summary judgment was properly granted since no genuine issue of material fact existed upon defendants' claim of privilege, and this is true whether the negligence standard permitted by Gertz or the "actual malice" standard of New York Times/Rosenbloom is applied.
Finally, assuming without deciding that neither Gertz nor Rosenbloom applies to Megaro, we nevertheless conclude that plaintiff has similarly failed to demonstrate such facts as would destroy the heretofore discussed qualified privilege granted him under state law. In order to overcome this privilege, it was plaintiff's burden to establish "malice in fact." It must show that "the statements complained of were made from an indirect or improper motive, and not for a reason which would otherwise render them privileged." Coleman, supra 29 N.J. at 373. Although summary judgment ordinarily is not granted where issues of subjective intent are involved, herein, plaintiff offered no relevant proof of any such intent and, to the contrary, the pleadings, depositions, affidavits and oral argument clearly indicate that Megaro's statements and press release were made without malice. Sokolay, supra, 65 N.J. Super. at 126-28. Thus, we find no genuine issue of fact established to defeat Megaro's defense of qualified privilege.
Accordingly, the summary judgment as to defendants News and Megaro is affirmed.
NOTES
[1] This question has not been conclusively decided. See Davis v. Schuchat, 510 F.2d 731, 734 n. 3 (D.C. Cir.1975); but see, Grove v. Dun & Bradstreet, Inc., 438 F.2d 433 (3 Cir.1971), cert. den. 404 U.S. 898, 92 S.Ct. 204, 30 L.Ed.2d 175 (1971).