149 N.J. Super. 542 (1977)
374 A.2d 89
STANLEY NOVACK, PLAINTIFF,
v.
CITIES SERVICE OIL COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 7, 1977.
*545 Mr. Paul R. Melletz for plaintiff (Messrs. Klein, Melletz and Sonstein, attorneys).
Mr. David H. Dugan, III, for defendant (Messrs McCullough and Dugan, attorneys).
WEINBERG, J.D.C., temporarily assigned.
This matter is presently before this court on defendant's motion for summary judgment. Plaintiff's complaint alleges causes of action grounded in contract and tort (defamation) for the allegedly wrongful revocation of plaintiff's Cities Service credit card. Defendant contends plaintiff has failed to state a justiciable cause of action. For the reasons expressed herein, this court concurs.
A motion for summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. See generally, Jackson v. Muhlenberg Hospital, 53 N.J. 138 (1969); Judson v. *546 Peoples Bank and Trust Co. of Westfield, 17 N.J. 67 (1954); Allen v. Planning Board of Evesham, 137 N.J. Super. 359 (App. Div. 1975).
The material facts alleged by the litigants are not in dispute[1] and, therefore, it is appropriately before this court on a motion for summary judgment. The facts leading up to this litigation are relatively simple and best recounted in chronological fashion.
Plaintiff applied for and obtained a Cities Service credit card in September 1972. Included with the card, when mailed to plaintiff, was a pamphlet describing generally the terms of the account. One such term was that the account could be cancelled at any time and that upon written request the card was to be returned to Cities Service. On February 4, 1974, plaintiff's account had a substantial balance which was then more than 40 days past due. On that same date, defendant mailed a notice to the operator of one of its service stations which plaintiff had used on a regular basis. The notice informed the operator that plaintiff's card was no longer to be honored and that a reward would be paid for its return.[2]
Plaintiff thereafter instituted this suit, alleging that this procedure of account cancellation was a breach of contract and that the notification sent by defendant to the station *547 operator was defamatory. On either ground, plaintiff has failed to state a cause of action cognizable in law.

I. Action Based in Contract
Plaintiff's argument under contract theory is that defendant, by cancelling plaintiff's credit card account without prior notice, and contrary to established intercompany procedures, breached an express term of the contract between them. This term, according to plaintiff, is to be found in the brochure supplied by defendant, specifically;
The card(s) shall remain the property of Cities Service, may be cancelled by it at any time, and upon its written request, you will surrender and mail same to it at its address set out below.
Both parties have expended considerable time and effort in attempting to give varying interpretations to this language. Plaintiff contends that before defendant can cancel the credit card it is required to give plaintiff written notice. In fact, during oral argument plaintiff stated that if he refused to return the credit card, defendant's only recourse would be by an action in replevin. Defendant states that the account may be revoked at any time by any means.
The initial question to be answered is whether the issuance and receipt of a credit card creates a contractual relationship.
There does not appear to be any reported New Jersey cases on this precise point. Assistance can be had from a few reported decisions in foreign jurisdictions as well as analogous New Jersey case law.
The most direct response to the issue appears in a Georgia appellate court opinion, City Stores Co. v. Henderson, 116 Ga. App. 114, 156 S.E.2d 818 (App. Ct. 1967), wherein plaintiff alleged a cause of action grounded in wrongful termination of a credit card account. Responding to plaintiff's breach of contract claim, the court held;
*548 The issuance of a credit card is but an offer to extend a line of open account credit. It is unilateral and supported by no consideration. The offer may be withdrawn at any time, without prior notice, for any reason or, indeed, for no reason at all, and its withdrawal breaches no duty  for there is no duty to continue it  and violates no rights. Acceptance or use of the card by the offeree makes a contract between the parties according to its terms, but we have seen none which prevents a termination of the arrangement at any time by either party. If notice of termination is required by either party, it must be so provided in the contract. As a rule there is no requirement of prior notice for termination by the issuer. A request to the person holding the card that it be surrendered upon termination of the extension of credit by the issuer is reasonable, and if he has the card it should be surrendered. [156 S.E.2d at 823]
Parenthetically, it is recognized that once notice of theft or loss is given to the issuer, the holder is no longer liable for subsequent purchases made. 26 Am. Jur. Proof of Facts, 497, 501, "Liability for Unauthorized Use of Credit Card." Accord, Read v. Gulf Oil Corp., 114 Ga. App. 21, 150 S.E.2d 319 (App. Ct. 1966). Certainly, if the card holder can terminate at will, any contractual relationship is, at best, illusory and hence not enforceable.
The decision in the City Stores case accords with generally held notions of what the tangible object, a credit card, itself signifies. As stated in 50 Am. Jur.2d 428, Letters of Credit and Credit Cards, § 38:
Basically, however, a credit card is nothing more than an indication to sellers of commodities that the person who has received a credit card from the issuer thereof has a satisfactory credit rating and that if credit is extended, the issuer of the credit card will pay (or see to it that the seller of the commodity receives payment) for the merchandise delivered.
See also, Lit Brothers v. Haines, 98 N.J.L. 658, 121 A. 131 (Sup. Ct. 1923); Jordan v. J.C. Penney, 114 Ga. App. 822, 152 S.E.2d 786 (App. Ct. 1966); see generally; 46 A.L.R. 3d 1383, "Credit Card Issuer's Liability for Wrongfully Refusing to Honor Card."
The conclusion that the issuance of a credit card does not create a contract includes an analysis of the concept *549 of consideration. It is well settled that to be enforceable a contract must be supported by valuable consideration. Coast National Bank v. Bloom, 113 N.J.L. 597 (E. & A. 1934); Fryns v. Fair Lawn Fur Dressing Co., 114 N.J. Eq. 462 (Ch. 1933); Levine v. Blumenthal, 117 N.J.L. 426 (Sup. Ct. 1936). Consideration involves a detriment incurred by the promisee or a benefit received by the promisor, at the promisor's request. In the credit card relationship, neither status is created. The holder of the card (promisee) is free to cancel or not use it, and has gratuitously received an opportunity to purchase without incurring any detriment. Additionally, there does not appear to be any benefit bargained for or received by the issuing company (promisor). Lacking consideration, the credit card account is, as stated in City Stores, a continuing offer to purchase which may be withdrawn by either party at any time.
Our Supreme Court has had occasion to discuss this concept, although in a different context, viz, specific performance of a realty contract. In the case of Friedman v. Tappan Development Corp., 22 N.J. 523 (1956), the court stated:
And where an offered promise receives no return promise, but can be accepted piecemeal by rendering a requested part performance, thus constituting a unilateral contract on the offered terms, such part performance, unless so rendered as to justify the implication of a promise to render the full performance proposed in the offer, leaves the offer revocable at the will of the offeror as to all but the rendered part performance. Corbin, Ibid., section 152. [at 534]
Accordingly, this court finds as a matter of law that no contractual relationship was created by the issuance and receipt of the credit card. Therefore, even if the court accepts plaintiff's contention that the statement in the brochure required a written request before the account could be cancelled by defendant, since no contract existed ab *550 initio, the statement cannot be incorporated into any prospectively created contract,[3] and hence has no binding effect.

II. Action Based in Tort (Defamation)
Plaintiff alleges in his complaint that the notice forwarded to the Cities Service station dealer was libelous in that it implied that plaintiff was a bad credit risk.
Actions alleging damages for libel are most appropriately considered on a motion for summary judgment. As stated in Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 429 (App. Div. 1958), "it is the function of the court, not the jury, in the first instance to determine whether the language used is reasonably susceptible of a defamatory meaning." See also, Leers v. Green, 24 N.J. 239 (1957); Barbetta Agency v. Evening News Pub. Co., 135 N.J. Super. 214 (App. Div. 1975).
The statement, when viewed in its entirety, is not capable of a defamatory meaning. The notice to cancel which was communicated to the station operator must be viewed in its entirety and within the context in which it was made. Dressler v. Mayer, 22 N.J. Super. 129, 132 (App. Div. 1952). Additionally, as stated in Dressler:
In determining whether words are capable of a defamatory meaning under the circumstances, the court should construe them according to the fair and natural meaning which will be given them by reasonable persons of ordinary intelligence. A sentence or phrase may not be seized upon and detached from its context to support an action for libel, if the publication as a whole is not, in fact, defamatory. [at 135]
This court further determines as a matter of law that defendant had a "qualified privilege" to make the *551 statement contained in the notice to its dealer and this privilege will defeat plaintiff's claim of libel.[4]
The public policy underlying the concept of privilege was succinctly stated by the court in Sokolay v. Edlin, 65 N.J. Super. 112 (App. Div. 1961).
The defense of privilege arises in those situations in which the public interest in permitting persons to speak or write freely without being restrained by the possibility of a suit for defamation outweighs the policies behind the law of defamation which imposes broad liability for the publication of false matters tending to injure the reputation of others. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 522, 577 (1955). In these situations the courts recognize the defense of privilege; privilege which may be absolute or qualified. The difference is that absolute privilege affords complete protection, whereas the qualified privilege affords protection only if there is no ill motive or malice in fact. Rainier's Dairies v. Raritan Valley Farms, Inc., supra, 19 N.J. at p. 558.
The court in Sokolay was also careful to note [at 124] that the existence of a privilege is for the court to decide as a matter of law.
Our decisional law has expressed a willingness to find a qualified privilege for communications between one extending credit and one having knowledge of the person seeking credit. One of the earliest New Jersey decisions to recognize this privilege was Van Horn v. Van Horn, 56 N.J.L. 318 (E. & A. 1893), wherein the court stated:
As to the question of privilege, the trial court charged the jury that a man has a right to inquire of his neighbor into the circumstances of a person to whom he is giving credit, and that person may on such occasions communicate freely, and unless his communication be of facts which he does not honestly believe or the communication be such as was made not for the honest purpose of conveying the *552 information to the inquirer, but such as in the judgment of the jury, under the evidence, shows that the defendant took advantage of that privilege to qualify a malicious purpose, no action will lie. This is a correct statement of the law. [at 325]
See also, Fahr v. Hayes, 50 N.J.L. 275, 278 (Sup. Ct. 1887); 30 A.L.R. 2d 776, Annotation, "Libel and Slander; Report of Mercantile Agency as Privileged."
Subsequent cases have established a qualified privilege for any communication "with relation to a subject-matter in which the party communicating has an interest, or in reference to which he has a duty, and to a person having a corresponding interest or duty." King v. Patterson, 49 N.J.L. 417, 420 (E. & A. 1887), Accord, Coleman v. Newark Morning Star Ledger Co., 29 N.J. 357, 373 (1959); Vail v. Pennsylvania R. Co., 103 N.J.L. 213 (Sup. Ct. 1926); see generally; Neigel v. Seaboard Finance Co., 68 N.J. Super. 542, 549 (App. Div. 1961). Clearly, the statement made by Cities Service was one in which they had an interest, and the recipient of that communication, the service station dealer, had a corresponding interest. Therefore, the notice from defendant to its dealer is cloaked with a qualified privilege.
A correlative to the principle of qualified privilege permits a defendant to overcome it through a showing of malice. Malice, in this context, is defined as publication of a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Another, useful definition of malice was stated by the court in Sokolay v. Edlin, supra:
The qualified privilege may be defeated if it is not made primarily for the purpose of furthering the interest which is entitled to protection and if defendant is moved chiefly by motives of ill will, or to accomplish a distinct objective which may be legitimate in itself but is not within the privilege. The primary motive or purpose is dispositive. Thus the existence of ill will, etc. will not defeat the privilege unless it is the primary motivating force. Coleman v. Newark *553 Morning Ledger Co., supra 29 N.J. at 375. [65 N.J. Super. at 127]
Turning to the communication made by Cities Service to its service station dealer, and considering the language used in its entirety and the context in which it was made, the fact that there was indeed an outstanding obligation and the total lack of personal involvement between plaintiff in New Jersey and defendant in Oklahoma, it is concluded that the primary, if not sole purpose of the communication was a legitimate business purpose. Plaintiff is unable to show facts of a contrary intention which would substantiate a finding of malice and therefore has been unable to overcome defendant's claim of a qualified privilege. Plaintiff has been permitted to serve 11 extensive sets of interrogatories and has had several opportunities to depose defendant's employees. The only fact he has been able to develop to support his claim of malice is that his credit card was cancelled in a manner contrary to defendant's ordinary procedures.
To conclude this opinion, this court finds the language in Sokolay v. Edlin, supra, 65 N.J. Super. at 126, to be highly appropriate wherein the court stated that "despite the admonition that summary judgment should rarely be granted where issues of subjective intent, such as good faith and belief are involved [.] Judson v. Peoples Bank and Trust Co. of Westfield, supra (I)t must be remembered that plaintiff had the burden of showing the privilege was abused. This burden has not been met. No genuine issue of fact exists."
For the reasons expressed, defendant's motion for summary judgment is granted.
NOTES
[1] Indeed, defendant in his brief in support of this motion has incorporated in toto a statement of facts prepared by plaintiff which is attached to plaintiff's pretrial memorandum. Defendant enlarged upon plaintiff's statement of facts through the affidavit of T.N. Cornish, credit manager, dated February 2, 1977, to which plaintiff stated his substantial agreement at oral argument. As stated in Muniz v. United Hospital, 146 N.J. Super. 512 (Law Div. 1977), "a motion to dismiss does not accept an adversary's theories; only the truth of the facts which he recites."
[2] The notice stated: "DO NOT HONOR THIS CARD  A $10.00 reward is offered for its return. Charges made after this date will not be accepted; credit card number XXX-XXX-XXXX; Stanley Novack."
[3] The agreement of the parties respecting the purchase and obligation of payment is founded upon the terms of the charge slip signed by the purchaser which states: "Customer acknowledges the credit card used in this purchase is unrevoked and agrees to pay for this purchase upon receipt of statement in accordance with the terms and conditions of the agreement governing the use of such card."
[4] In Sokolay v. Edlin, 65 N.J. Super. 112, 123 (App. Div. 1961), the court spoke in the following terms; "Of course, if the words used were privileged by reason of the circumstances under which they were spoken summary judgment was proper irrespective of whether the language was actionable per se." This reasoning would apply equally as well to libel actions.