In re Louis E. PICCOLOMINI, Jr. t/a Mama Pic's Drive–In Foods t/a Pic 'N Save, Debtor.

WHEELING WHOLESALE GROCERY COMPANY, a West Virginia Corporation, Plaintiff,

v.

Louis E. PICCOLOMINI, Jr. t/a Mama Pic's Drive–In Foods t/a Pic 'N Save, Defendant.

Bankruptcy No. 87–2626.
Adv. No. 87–0433.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 1, 1988.

Michael E. Hooper, Herndon, Morton, Herndon & Yaeger, Wheeling, W.Va., for plaintiff.

James C. Warmbrodt, Pittsburgh, Pa., for debtor/defendant.

MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is Plaintiff's Complaint for Determination of Dischargeability of Debt pursuant to § 523(a)(2) and (a)(6).[1] Specifically, the Plaintiff alleges that the Debtor committed fraud in the tender of post-dated checks for goods provided on a C.O.D. basis and that on the date the checks were tendered, as well as the date wherein they were presented to the bank in accordance with the draft date, they were, or would have been, dishonored as being written against an account with insufficient funds. Plaintiff further asserts that the taking of its goods, in return for tender which the Debtor knew was invalid, caused Plaintiff to suffer willful and malicious injury.

Debtor contends that Plaintiff was well aware of the financial hardships he was

---

1. This is a core matter over which this Court exercises its jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I).

enduring, that he advised Plaintiff of the need to use post-dated checks, and that prior to the presentment date, he further advised Plaintiff that he needed more time to "make the checks good". Debtor avers that these actions vitiate any scienter, justifiable reliance, wilfulness or maliciousness necessary for Plaintiff to meet its burden.

Based upon the parties' partial stipulation of facts and the testimony provided at hearing, we find that Plaintiff has met its burden under § 523(a)(2) and the dischargeability of its debt will be denied. Having so determined, it is unnecessary for us to decide the issue under § 523(a)(6).

## FACTS

In June of 1986 Debtor had his first serious contact with Plaintiff regarding the opening of a new supermarket. Debtor sought Plaintiff's services as primary supplier for dry goods and frozen foods. Original discussions involved the supply of an opening order, a general thirty (30) day credit period and Plaintiff's exclusive right to stock the store. These tentative discussions were not reduced to an agreement; no "meeting of the minds" occurred and therefore an agreement was never consummated.

Several months later Plaintiff learned that Debtor was in financial difficulty, in that he had underestimated the cost requirements to build, furnish, stock, and operate the store. Plaintiff learned this information in meetings with Debtor and his lender. After a period of in-house discussions, Plaintiff determined that Debtor's credit standing was too unstable to warrant Plaintiff's initial investment of stock on credit. Thereafter Debtor sought. and obtained an alternate primary supplier.

Early in 1987 Debtor contacted Plaintiff to discuss a business relationship wherein Plaintiff would act as Debtor's secondary supplier. Plaintiff agreed, on very specific C.O.D. terms:

(1) an order would be mailed to Plaintiff outlining specifically the type and quantity of stock to be purchased;

(2) on the morning of a delivery date, Plaintiff would call Debtor to advise him of the delivery and the exact price; and

(3) upon delivery Debtor was to tender full payment, by check, to the truck driver.

A total of four deliveries were made to Debtor. The first delivery occurred on March 5, 1987. The driver delivered the goods; Debtor signed the invoice and tendered a check for the full price of $4,069.89. On March 25, 1987 the second delivery was made. Again, the driver delivered the goods, Debtor signed the invoice, and tendered a check for the full price of $2,083.73.

The third and fourth deliveries both occurred on April 2, 1987. In each case, when the truck arrived, Debtor signed the invoice, and while unloading the truck, advised the driver that the check for payment was being held for him at another of Debtor's business ventures, Mama Pic's Drive–In Foods ("Mama Pic's"), located across the street from the grocery store. Upon arrival at the restaurant the driver was handed a sealed envelope, addressed by name to Plaintiff's Retail Development Manager. Although uncomfortable with doing so, the driver opened the envelope to verify that it held a check in the appropriate sum. Seeing that the check was in fact drafted in the correct amount, the driver returned to his truck. Upon said return, he found the truck had been emptied and the merchandise removed from the curb and locked in the Debtor's store.[2] In neither case did the driver notice that the check was dated 5–2–87 instead of 4–2–87.

Debtor asserts that he called Plaintiff on April 2, 1987, after the deliveries were made, but before the drivers would have returned, to advise Plaintiff that the checks were post-dated. Plaintiff asserts that Debtor never mentioned that the checks were post-dated; only that he needed an extension of credit on this order. Plaintiff determined that credit could not be arranged. After Plaintiff learned that the

2. Debtor's store was not yet open for business.

checks were post-dated it continued to approach Debtor, through one of its sales representatives, in order to have Debtor replace the post-dated checks with current checks or cash. Debtor refused to do so, essentially because he did not have the necessary funds.

Debtor asserts that he called Plaintiff on April 29, 1987, advising Plaintiff that the checks dated "5–2" were still "not good", in that he still had insufficient sums in the bank to cover those checks. Debtor requested additional time for payment, suggesting an installment plan as a method for repayment. Plaintiff denies any knowledge of said telephone call. On May 2, 1987 Plaintiff presented the previously delivered checks at the bank, and same were dishonored for nonsufficient funds.

On May 27, 1987 Plaintiff sent a certified letter to Debtor, receipt of which he acknowledged, in which Plaintiff formally notified Debtor that the checks were returned dishonored. Plaintiff received no answer. On June 19, 1987 Plaintiff filed a Civil Complaint in the Court of Common Pleas of Fayette County. This suit culminated in a Default Judgment and Execution. On September 18, 1987 the Sheriff of Fayette County padlocked the grocery store for the purposes of subsequent sale. Debtor filed a Chapter 11 Plan of Reorganization on September 24, 1987, arresting any further action by the Plaintiff.

## ANALYSIS

Section 523(a)(2)(A) states as follows:

**§ 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141 or 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extend obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

In order for Plaintiff to succeed on this action, it must prove that the Debtor made representations, which he knew to be false when made, intending to deceive the Plaintiff, who in reliance on same sustained loss or damages. *In re Roberts*, 81 B.R. 354 (Bankr.W.D.Pa.1987); *In re DiPierro*, 69 B.R. 279 (Bankr.W.D.Pa.1987). A deliberate nondisclosure of a material fact is just as culpable as an intentional false affirmation. *Mursau Corp. v. Florida Penn Oil & Gas Inc.*, 638 F.Supp. 259 (W.D.Pa. 1986); *Marion Bank v. International Harvester Credit Corp.*, 550 F.Supp. 456 (E.D.Pa.1982), *aff'd mem.*, 725 F.2d 668 (3rd Cir.1983).

Debtor knew in March that all business dealings with Plaintiff would be on terms stated: "C.O.D.-check". The checks tendered by Debtor for his March deliveries were handed directly to the drivers, and were proper as to both date and amount. On April 2, 1987, Debtor directed the drivers to obtain the checks from Debtor's restaurant across the street. These checks were delivered in *sealed* envelopes addressed to a management level individual at Plaintiff's offices. The drivers, although uncomfortable with the opening of letters addressed to their superiors, did so, in order to determine that the checks were for the correct amounts. Neither driver noticed that the date on the checks was written as 5–2–87 instead of 4–2–87.[3] When the drivers returned to their trucks, the merchandise had already been completely unloaded, and the store was closed. Even if the drivers had noticed the post-dating of the checks, they would have been without recourse to reclaim the merchandise.

Debtor further asserts that he called Plaintiff, after the delivery, but before the drivers returned to Plaintiff's office, to advise Plaintiff of the post-dating. Plaintiff asserts that Debtor made no statement as to post-dating and that Plaintiff was not aware of same until the evening of April 2. We find Plaintiff's testimony to be the more credible of the two; however, even if we accept Debtor's statements, his actions

---

**3.** Although it appears likely that the drivers *would* have noticed "May 2" instead of "April 2".

placed Plaintiff in a position of *imposed* acceptance. If Debtor had informed Plaintiff prior to the delivery, Plaintiff would have stopped the drivers from releasing the merchandise. Once Debtor was in possession of the goods, Plaintiff had no alternative but to continue attempts at collection and present the checks when they became active.[4]

Debtor testified that he called Plaintiff on April 29 to state that the necessary funds were still not available, and the post-dated checks would not be honored on May 2, 1987. Plaintiff countered said testimony, indicating no memory or record of any such conversation. Again, we find Plaintiff's testimony to be more credible than Debtor's assertion. However, whether Plaintiff knew the funds were not available on May 2, 1987 is irrelevant to the determination under § 523(a)(2)(A), as the materially false representation, in this case silence and/or concealment, occurred on April 2, 1987.

In summary, it is clear to this Court that Debtor made representations to the Plaintiff that it knew to be false when made, and knew Plaintiff relied upon same. Specifically, when Debtor received the goods, he knew that possession of same would not be transferred unless there was compliance with the terms: C.O.D.-check. When Debtor advised the driver that the check was across the street in the restaurant, he silently represented that a valid check was to be tendered to immediately pay for the goods. In fact, the representation was false in that the check was post-dated; in addition, the account contained insufficient funds to cover the draft. At the earliest point that Plaintiff could have known of the false representation, it had already relied to its detriment. The goods had been taken from the curb, placed with other fungible goods in the store, and the door to the store was locked. Plaintiff had no ability at that time to reclaim its property without breaking the peace. Debtor in-

tended to deceive and did in fact deceive Plaintiff's representatives.

Finally, Plaintiff has shown, and Debtor admits, that Debtor has received $7,205.93 worth of Plaintiff's goods for which Plaintiff has not been paid. Plaintiff has thoroughly met its burden of proof under § 523(a)(2)(A), and therefore said debt will not be discharged.

An appropriate Order will be issued.

---

**4.** Debtor's assertion that Plaintiff sat on its rights from April 2 to May 2 is not persuasive. Plaintiff was Debtor's secondary supplier, and the merchandise was completely fungible.

Once Debtor placed the goods on his shelves, there was no way for Plaintiff to trace its goods and reclaim.