**In the Matter of Robert A. & Sandra M. KNAPP, Debtors.**

**UNITED COUNTIES TRUST CO., Plaintiff,**

v.

**Robert A. & Sandra M. KNAPP Defendants/Debtors.**

Bankruptcy No. 89–05264.
Adv. No. 90–3325TG.

United States Bankruptcy Court,
D. New Jersey.

Feb. 28, 1992.

Gerard Felt, Pressler & Pressler, for United Counties Trust Co.

OPINION

WILLIAM H. GINDIN, Chief Judge.

### PROCEDURAL HISTORY AND FACTS

This matter comes before the court on a complaint to determine that the debt to United Counties Trust Co. ("plaintiff") based upon the issuance of a credit card is non-dischargeable. Plaintiff alleges that the debtor, Sandra M. Knapp ("debtor") made certain purchases using her credit card between July 30, 1989 and September 5, 1989, intending not to pay for those purchases. No allegations are made against defendant, Robert A. Knapp, the complaint is therefore, dismissed as against Robert A. Knapp.

Debtor and her husband filed a petition pursuant to Chapter 13 of the Bankruptcy Code on June 30, 1989. A notice of first meeting of creditors was dated August 17, 1989 and docketed August 21, 1989. That notice set the first meeting for October 3, 1989. The meeting was held on October 3, 1989 and a plan was confirmed pursuant to Chapter 13 on October 10, 1989.

The debtors failed to make all of the payments under the plan and on May 1, 1990, the court entered an order converting the case to one under Chapter 7.

The debtor maintained a credit card account with plaintiff before the filing of the Chapter 13. It would appear from the history noted on the account history (P–1 in evidence) that the account had been opened in February 1984. After the filing of the Chapter 13 petition and beginning on July 30, 1989, the debtor used the card for purchases from retail stores such as B. Altman's, Crabtree and Evelyn, JC Penney and Macy's. In addition, on August 29, 1989, the debtor took a cash advance of $1200.00. The last charge listed on the credit card was on September 5, 1989, at which time the debtor charged $74.97 at JC Penney.

Plaintiff asserts that upon receipt of the notice from the Bankruptcy Court in late August 1989, it issued what it called a "revoke letter." That letter called the attention of the debtor to the fact that her original agreement contained a provision such that in the event that the debtor filed a petition in bankruptcy, the credit card would be revoked. It can be inferred that upon receipt of that letter, the debtor ceased using the credit card. The total amount claimed for the period in question is $1,884.03, which amount the plaintiff claims is non-dischargeable.

Since the debtor defaulted, no defenses were raised, but nevertheless, this court must determine whether or not a prima facie case was made out.

### ISSUES

As a result of the foregoing factual and procedural analysis, four issues are presented for determination:

I. What showing is necessary to be made by a plaintiff in order to enter judgment after default?

II. Was the credit card properly revoked such that plaintiff can assert fraud in its usage?

III. Is an obligation incurred after the filing of a Chapter 13 petition, but prior to its conversion to a Chapter 7 case, dischargeable in bankruptcy?

IV. Do the facts as set forth constitute a prima facie case of fraud in contravention of the provisions of § 523(a)(2)(A)?

### DISCUSSION

#### I

■ The threshold determination is whether or not the court should take testimony in order to establish the basis for a judgment by default. Fed.R.Civ.P. 55(a) permits the Clerk to enter a default in a case where a defendant "has failed to plead or otherwise defend." Therefore, there is no judicial intervention with respect to the entry of the default. In order to enter judgment, however, the provisions of Fed. R.Civ.P. 55(b)(1) and (2) must be followed.

Where the plaintiff's claim is certain, the Clerk has the authority to enter the judgment. Where the case, however, has as its basis some determination other than a pure money judgment, the court must make the

determination. Fed.R.Civ.P. 55(b)(2) requires the court to exercise its discretion. It has been held without equivocation that the court may require the plaintiff to put forth a prima facie case in order to justify the entry of judgment. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61 (2d Cir. 1981); *Televidio Systems, Inc. v. Heidenthal,* 826 F.2d 915 (9th Cir.1987). In the instant case, where the allegation is one of fraud, it is appropriate that the court hear the evidence to insure that the drastic remedy of a determination of non-dischargeability is not entered without the presentation of a prima facie case.

## II

The second issue arises as to whether or not the "revoke letter" in fact served to revoke the arrangement between the plaintiff and the debtor. While it is true that New Jersey has adopted the view that no contractual relationship is created by the issuance of a credit card [1], the issue before this court involves only the right of this debtor to use the credit card under the circumstances herein set forth. In *Novak,* the court analyzed a credit card agreement in terms of consideration and mutuality and provided that the card issuer could cancel the agreement at any time. The court further found that the agreement lacked consideration which it defined as a detriment incurred by the promisee, or a benefit by the promisor, at the promisor's request in that:

> [t]he holder of the card (promisee) is free to cancel or not use it, and has gratuitously received an opportunity to purchase without incurring any detriment. Additionally, there does not appear to be any benefit bargained for or received by the issuing company (promisor). Lacking consideration, the credit card is ... a continuing offer to purchase which may be withdrawn by either party at any time.

*Id.,* at 543, 374 A.2d 89.

■ Notwithstanding the fact that there is no express contract, the facts in the within case establish that the only revo-

cation was the "revoke letter." Absent the revoke letter, the debtor had a right to use the card. The only basis for the revoke letter was the filing of the petition in bankruptcy and the exercise of that right is proscribed by the Bankruptcy Code. 11 U.S.C. § 541(c)(1)(B) provides that an interest of the debtor in property becomes property of the estate

> notwithstanding any provision in an agreement, transfer instrument, or applicable non-bankruptcy law ... that is conditioned on the insolvency or financial condition of the debtor on the commencement of the case under this title that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in the property.

Since the only reason for revocation testified to by the plaintiff's representative was the filing of the petition in bankruptcy, that revocation could not be effected in light of § 541(c)(1)(B). Thus, unless prohibited under the Bankruptcy Code the debtor had every right to use the card after the filing of the Chapter 13 petition. No such prohibition can be found. In fact, under Chapter 13, "... the debtor shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b).

## III

The third issue before the court is whether or not the debt is dischargeable. It was, of course, incurred post-petition since all of the complained of actions took place after the filing of the petition. Under normal circumstances, the discharge granted in a Chapter 13 would not include these debts since they were not provided for in the plan. 11 U.S.C. § 1328(a). Any balances due the plaintiff prior to June 30, 1989 were, of course, included, but unless the plan was later modified and notice given, these debts would be post-petition responsibilities of the debtor. In the instant case, however, the case was converted and the question of whether or not the debt may be discharged if otherwise dischargeable is governed by the provisions of 11 U.S.C. § 348(d).

---

1. *Novack v. Cities Service Oil Co.,* 149 N.J.Super. 542, 374 A.2d 89 (Law Div.1977), *aff'd* 159 N.J.Super. 400, 388 A.2d 264 (App.Div.1978).

The main case file does not reveal the basis upon which the case was converted. It appears, however, from that file that it was either at the request of the debtor pursuant to 11 U.S.C. § 1307(b) or for failure to make timely payments under the plan pursuant to 11 U.S.C. § 1307(c)(6).

In either event, the effect of such a conversion is governed by the provisions of 11 U.S.C. § 348. Subsection (d) of that statute states:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under §§ 1112, 1307, or 1208 of this title ... shall be treated for all purposes as if such claim had arisen immediately before the date of filing of the petition.

Therefore, the charges by debtor made in between the filing of the Chapter 13 and the conversion to Chapter 7 shall be treated as prepetition claims. The logic of this provision is exemplified by an examination of 11 U.S.C. § 348(b). In fact, the order for conversion operates as an order for relief under the new chapter and, as a result, notices are sent and a creditors meeting is held pursuant to the provisions of 11 U.S.C. § 341(a).

Thus, for the purpose of the granting of a discharge under Chapter 7 of the Bankruptcy Code, a debt incurred during the "gap period" between the filing of the original petition pursuant to Chapter 13 and the conversion to Chapter 7 is dischargeable unless the facts prove that the debtor is not entitled to a discharge under 11 U.S.C. § 523(a)(2)(A).

### IV

The final determination to be made by this court is whether or not the facts set forth herein constitute fraud. In order to constitute fraud in the instant case, it is necessary that the plaintiff prove that there was actual fraud. In order to prove actual fraud, the creditor must show that the debtor either made a misrepresentation or did an act which was wrong. The proofs must show that the debtor knew that it was wrong, that she intended the creditor to rely on the act or misrepresentation and that the creditor did, in fact, rely on such act or misrepresentation and, finally, that the creditor was damaged thereby. 11 U.S.C. § 523(a)(2)(A). *In re Maurer*, 112 B.R. 710 (Bankr.E.D.Pa.1990); *See also In the Matter of Haining*, 119 B.R. 460 (Bankr.D.Del.1990); *In re Cirineo*, 110 B.R. 754 (Bankr.E.D.Pa.1990).

The facts set forth above fall woefully short of any prima facie case. It is clear that not only were there no proofs concerning inappropriate actions by this debtor, but rather the debtor appears to have ceased using the credit card as soon as she was informed that the plaintiff considered it revoked. As a matter of law, the action could not have been wrong and there is no evidence that the debtor knew that it was wrong or intended the plaintiff to rely on that action.

### CONCLUSION

Under the circumstances this court finds and concludes that the plaintiff has failed to make out a prima facie case of violation of 11 U.S.C. § 523(a)(2)(A) and the complaint is hereby dismissed with prejudice.