**In re Donald O. REYNOLDS, Debtor.**

**Victor M. STARR and Heidi Starr, Plaintiffs,**

v.

**Donald O. REYNOLDS, Defendant.**

**Bankruptcy No. 94–31132.
Adversary No. 94–3329.**

United States Bankruptcy Court,
D. New Jersey.

Aug. 18, 1995.

Patricia A. Cauldwell, Chapman, Henkoff, Kessler, Peduto & Saffer, Roseland, New Jersey, for Plaintiffs.

Melinda D. Middlebrooks, Middlebrooks & Shapiro, Prudential Business Campus, Parsippany, New Jersey, for Defendant.

### MEMORANDUM OPINION

KATHRYN C. FERGUSON, Bankruptcy Judge.

### INTRODUCTION

On July 11, 1994, Victor and Heidi Starr (the "Starrs" or "Plaintiffs") filed an adversary complaint against Donald O. Reynolds ("Defendant" or "Debtor"). The Starrs allege that their claim, arising out of the purchase of an allegedly defective house from the debtor, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6). The court conducted a trial by declaration on July 5, 1995. The following represents the opinion of the court.

### FACTS

Donald and Patricia Reynolds purchased a home located at 84 Deerhaven Road, Mahwah, New Jersey ("the property") in December, 1984. At that time, they hired Sherlock Home Inspectors, Inc. to inspect the property. The inspection report revealed no structural defects, and the Reynolds relied on the report when they purchased the property. According to Mr. Reynolds, no structural

changes were made to the property after they purchased it.

The Reynolds were divorced on February 13, 1990. As part of the divorce proceeding, the Superior Court Judge ordered Joel Reinfeld ("Reinfeld"), Patricia Reynolds' attorney in the divorce proceeding, to act as the attorney-in-fact for the sale of the property. Reinfeld listed the property for sale over the course of 1990 and 1991. During the end of July, 1991 Reinfeld received two offers on the property, one from Timothy and Gloria Tuttle and the other from Victor and Heidi Starr. Since the Tuttle offer was slightly higher, Reinfeld executed a contract of sale with the Tuttles on July 28, 1991.

The Tuttles then retained Gerry Guilfoyle, president of Guardian Homes, to conduct a home inspection. Mr. Reynolds was at the property for the home inspection, but did not accompany Mr. Guilfoyle and the Tuttles through the house. At the end of the inspection, Mr. Guilfoyle spoke with Mr. Reynolds and the Tuttles regarding his conclusions. Neither Mr. Reynolds nor the Tuttles were present for the entire conversation, although there was clearly some overlap. Mr. Guilfoyle states that he advised Mr. Reynolds that the house had structural defects. Mr. Reynolds contends that he was informed that some parts of the house evidenced poor workmanship but he was never told that there were any structural defects. Mr. Guilfoyle never prepared a written report for the Tuttles or served the Reynolds with any sort of written inspection report. Based on the home inspection the Tuttles withdrew their offer.

Reinfeld then informed the Starrs that the previous offer had been withdrawn due to problems with the inspection. On August 13, 1991, the Starrs and Reinfeld executed a contract of sale. Both Mr. and Mrs. Starr acknowledge that they were aware that the first offer had been withdrawn because of the home inspection.

As a condition of entering into the contract with Reinfeld, the Starrs requested that the Reynolds execute a Property History Form. Donald Reynolds completed and signed a Property History Form in which, inter alia, he indicated that he was not aware of any condition or information regarding the property that might affect its value or use. The Property History Form also contained a disclaimer, which stated in bold letters that

THIS PROPERTY HISTORY IS BASED ON MY LAYMAN'S OBSERVATION AND IS NOT A WARRANTY OF ANY KIND BY MYSELF OR MY AGENT AND IS NOT A SUBSTITUTE FOR EXPERT INSPECTIONS THAT THE BUYER MAY WISH TO OBTAIN

On August 21, 1991, Joseph Agner d/b/a Executive Home Consultants inspected the home for the Starrs. A copy of his report was forwarded to Reinfeld on August 26, 1991. The report revealed the need for certain minor repairs to the porch, attic ladder, and certain areas of dry wall but made no mention of structural defects. The parties went forward with the closing on December 9, 1991.

Shortly after closing on the transaction, the Starrs became aware of various structural defects in the home. They discovered that at least some of the "minor repairs" identified in their home inspectors report were actually symptoms of larger structural problems. After a serious roof leak in April, 1992 the Starrs decided to investigate both the extent of the structural problems and the extent of the Reynolds prior knowledge. Mr. Starr meet with Timothy Tuttle, who gave him the name of the home inspector he had used. Mr. Starr then met with Mr. Guilfoyle, who informed him of the results of the inspection of 84 Deerhaven Road that he had performed for the Tuttles. At Mr. Starr's request, Mr. Guilfoyle provided him with a letter containing his recollections. The letter pointed out specific problems with the house, and concluded that the construction was clearly sub-standard. Notably, the letter did not use the word "severe" or the phrase "structural defects". The letter was dated May 1, 1992, almost a year after the inspection, and was based exclusively on Mr. Guilfoyle's recollection of the property. No written report was prepared at the time of the inspection and Mr. Guilfoyle stated that if he had kept written or recorded notes he no longer had them at the time that he prepared the letter.

On June 12, 1992, the Starrs instituted an action in the state court against the Reynolds, Reinfeld, the listing and selling agents, and Joseph Agner d/b/a Executive Home Consultants. Joseph Agner filed a Chapter 7 petition on September 1, 1993. Donald Reynolds filed his voluntary Chapter 7 petition on February 25, 1994 and this court granted the debtor a discharge on August 22, 1994. The plaintiffs commenced this adversary proceeding on July 11, 1994 seeking to except the Starrs' claim from the debtor's discharge based on sections 523(a)(2)(A) and 523(a)(6).

### DISCUSSION

In keeping with the overriding goal of the Bankruptcy Code to give debtors a fresh start, exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors. *In re Cohn*, 54 F.3d 1108 (3d Cir.1995). The burden of proving that a debt is nondischargeable under section 523(a) is on the creditor, who must establish entitlement to an exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

*Section 523(a)(2)(A)*

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, [or] services ... to the extent obtained by false pretenses, a false representation or actual fraud". Actual fraud has been defined as "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done, or omitted with the design to perpetrating what is known to be a cheat or a deception." *Flint Area School Employee Credit Union v. Nogami (In re Nogami)*, 118 B.R. 846, 848 (Bankr.M.D.Fla.1990).

Plaintiffs allege that the debtor committed actual fraud when he knowingly misrepresented the condition of the house to the Starrs and when he unlawfully concealed the existence of material, latent defects in the house that were known to him.

In order to prove actual fraud, the creditor must show that the debtor either made a misrepresentation or did an act which was wrong. The proofs must show that the debtor knew that it was wrong, that she intended the creditor to rely on the act or misrepresentation and that the creditor did, in fact, rely on such act or misrepresentation and, finally, that the creditor was damaged thereby.

*United Counties Trust Co. v. Knapp (In the Matter of Knapp)*, 137 B.R. 582, 586 (Bankr. D.N.J.1992). Therefore, in order to prevail in this action, the plaintiffs must show that Mr. Reynolds knew at the time he signed the Property History Form that he was concealing known structural defects in the house and that he intended the Starrs to rely on his representations to their detriment.

Plaintiffs cite *Petrillo v. Bachenberg*, 139 N.J. 472, 655 A.2d 1354 (1995), in support of the proposition that the objective purpose of a disclosure form in a real property transaction is to induce the purchaser to rely on the characterization of the property made therein. A careful reading of *Petrillo* yields a much more narrow holding. *Petrillo* held that in certain circumstances an attorney has a duty to a buyer not to provide misleading information if the attorney knows or should know that the buyer will rely on it. *Petrillo* at 489, 655 A.2d 1354. In fact, while the opinion contained dicta about the purpose of the disclosure form, a purpose with which this court can agree in principle, the court did not hold that buyers are absolutely entitled to reliance on all disclosure forms. The *Petrillo* court acknowledged that had the composite report at issue in that case stated that it should not be relied on for any other purpose, the outcome may have been different. In this case the document allegedly relied upon by the Starrs stated that it was only a lay opinion and should not be relied upon for anything more.

The plaintiffs also argue that the fact that they obtained an independent home inspection does not relieve the debtor of his responsibility for making a false statement or lessen the Starrs' right to rely on the statement. *Golden v. Northwestern Mutual Life Ins. Co.*, 229 N.J.Super. 405, 415, 551 A.2d 1009 (App.Div.1988). That case, however, arose in the context of statements made in an insur-

202

ance application. The court found that it is customary in the industry for insurance companies to rely on the truthfulness of an insured's report of his medical history. Those facts are far different from the present case, because buyers do not customarily rely on the seller's assurances about the condition of the property. If that were the case, then buyers throughout the state would be wasting their money on home inspections. Moreover, the *Golden* court stated that "the law governing independent investigations seems clearly to have settled the principal that when one undertakes to make an independent investigation and relies upon it, he is presumed to have been guided by it and be bound accordingly." *Id.* at 415, 551 A.2d 1009.

■ The first element the plaintiffs need to establish under § 523(a)(2)(A) is that Mr. Reynolds was aware of the defects in the house and intentionally concealed that knowledge from them as purchasers. When Mr. Reynolds purchased the house in 1984 he had obtained a home inspection from Sherlock Home Inspectors, Inc. that revealed no structural defects in the property. Therefore, any prior knowledge Mr. Reynolds had of defects would have to have been as a result of the home inspection conducted by Mr. Guilfoyle on behalf of the Tuttles. There is contradictory testimony regarding what information Mr. Guilfoyle conveyed to Mr. Reynolds about the inspection. Mr. Guilfoyle claims that Mr. Reynolds participated in his discussion with Mr. Tuttle about the significant structural defects. Mr. Reynolds agrees that he spoke briefly with Mr. Guilfoyle after the inspection about the results, but insists that all he was told was there was evidence of poor workmanship.

It is significant to note that the structural defects contained in the house were not readily detectable by a lay person. The Starrs themselves went to look at the house twice prior to purchasing it and never noticed any problems. In fact, the problems were not even detected by two supposedly trained professionals. Neither Sherlock Home Inspectors, Inc. nor Executive Home Consultants detected the existence of any

structural problems when they inspected the house.

Even assuming for the moment that Mr. Reynolds was aware of the defects and withheld that information from the Starrs, that alone does not establish the Plaintiffs' case. The second prong of the analysis under § 523(a)(2)(A) requires that Mr. Reynolds intended that the Starrs rely on his misrepresentation. *Knapp* at 586. The Starrs point to the Property History Form as tangible evidence of Mr. Reynold's intent that they rely on his fraudulent misrepresentation. That document proves quite the opposite. The bottom of the one page form clearly states that the opinion is based on a layman's observation and that it is *not* a substitute for any expert inspection that the buyer may wish to obtain. The lack of intent to induce reliance on the part of the Debtor is further buttressed by the Contract of Sale that was executed concurrently between Reinfeld and the Starrs. The Contract of Sale contains a provision expressly permitting the purchaser to have an inspection of the premises conducted. Those documents taken together clearly indicate an anticipation if not a desire on the part of the Debtor that the buyers obtain an independent inspection of the property rather than rely on his representations.

Although not expressly required by the statute, some courts have held that *reasonable* reliance is required to render a debt nondischargeable under 11 U.S.C. § 523(a)(2)(A). *Fluehr v. Paolino (In re Paolino )*, 89 B.R. 453 (Bankr.E.D.Pa.1988). Although the Third Circuit has not specifically ruled on the issue, the majority of circuit courts to have considered it require that the reliance be reasonable. *See, e.g., Coman v. Phillips (In re Phillips )*, 804 F.2d 930 (6th Cir.1986). Under that standard, the Plaintiffs clearly do not prevail because even if they establish that the Debtor intended that they rely on his misstatements, under the circumstances their reliance was not reasonable. The Starrs were aware that the prior offer had been withdrawn because of the home inspection, yet they claim that they relied on the Debtor's assurance in the Property History Form that he was aware of no

**203**

problems with the property. After receiving the Property History Form the Starrs then obtained their own independent home inspections. While it might be fair to say that the Starrs reasonably relied on the home inspection report, it is illogical to say that they reasonably relied on the statements of the Debtor, who admittedly was a lay person and had not been residing on the property for several years prior to the sale.

As noted above, the burden is on the creditor to establish that the requirements for an exception to discharge have been established. Based on the evidence presented, the Starrs have not met their burden of establishing that the Debtor acted with the intent that the Starrs rely on his representations to their detriment. Nor have they established that any possible reliance was reasonable under the circumstances.

*Section 523(a)(6)*

■ Section 523(a)(6) excepts from discharge "any debt for willful and malicious injury by the debtor to another entity or to the property of another entity."

> Fraud can ... constitute a cause of action under § 523(a)(6) as well if the conduct meets the tests of willful and malicious injury. To prove that fraudulent representations or other conduct were "malicious" within the meaning of Code § 523(a)(6), the plaintiffs must prove that the representations *necessarily* led to their injuries.

*Lerch v. Iommazzo (In re Iommazzo )*, 149 B.R. 767, 772 (Bankr.D.N.J.1993) (citations omitted). The Third Circuit has stated that the requirement of 'necessarily produce harm' is the equivalent of 'substantially certain to produce harm'. *In re Conte*, 33 F.3d 303, 308 n. 2 (3d Cir.1994).

■ The Plaintiffs face a difficult task in establishing that any possible misrepresentations by the Debtor necessarily led to their injuries. Mr. Starr testified that had the Property History Form mentioned structural defects, he would not have even taken the additional step of having a home inspection. And while the Starrs testified that they relied upon both their home inspection report and the Property History Form, at a deposition conducted on August 10, 1993, Mr. Starr's response to a question about whether he noticed that the ceiling on the first floor was sagging was "I relied on my home inspector". Based on the plaintiff's own testimony, it is clear that the Property History Form only induced the Starrs to take the additional step of hiring a home inspector. The Starrs did not simply take Mr. Reynolds word for the condition of the property. There is no reason to assume that Mr. Reynolds did not fully expect that the Starrs would hire a home inspector; he and his wife had done so when purchasing the house seven years earlier. The Starrs had done so when they purchased a prior house. Thus, any statements made by Mr. Reynolds could not have been substantially certain to produce harm. Putting aside the state of the debtor's knowledge regarding defects, the debtor's actions did not necessarily lead to the plaintiffs injuries; a faulty home inspection did. In their closing argument, plaintiffs suggest that because the home inspection gave them no reason to question the representation made in the Property History Form it was reasonable to rely on it. That argument begs the question. It is unfortunate that the home inspection did not reveal the defects, but it is patently unreasonable to suggest that the Starrs relied to their detriment on the observations of a lay person when they had obtained their own professional evaluation of the house.

### CONCLUSION

■ The Plaintiffs have failed to establish by a preponderance of the evidence that their claim is nondischargeable under either 11 U.S.C. § 523(a)(2)(A) or (a)(6). The evidence has established, however, that the Debtor's representations did necessarily lead to the Plaintiffs incurring the expense of a home inspection. Therefore, the court finds that pursuant to section 523(a)(6) the cost of the home inspection, in the amount of $250, is non-dischargeable. The remainder of the Plaintiffs' claim is discharged pursuant to 11 U.S.C. § 727. Attorney for the Defendant should submit a proposed form of judgment in accordance with this opinion.