In re Donald O. **REYNOLDS,** Debtor.

Victor M. **STARR,** Heidi
**Starr,** Appellants,

v.

Donald O. **REYNOLDS,** Appellee.

Civ. No. 95–5333 (GEB).

United States District Court,
D. New Jersey.

Feb. 5, 1996.

---

Patricia A. Cauldwell, Chapman, Henkoff, Kessler, Peduto & Saffer, Roseland, NJ, for Victor M. Starr, Heidi Starr.

Melinda D. Middlebrooks, Middlebrooks & Shapiro, P.C., Parsippany, NJ, for Donald O. Reynolds.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on the appeal of Victor M. Starr and Heidi Starr ("Starrs" or "Appellants") of the Bankruptcy Court's Final Order of September 7, 1995, which found that Appellants failed to establish by a preponderance of the evidence that their claim is nondischargeable under either 11 U.S.C. §§ 523(a)(2)(A) or (a)(6). Appellants also appeal the Bankruptcy Court's decision not to qualify Appellants' real estate appraiser as an expert witness. For the reasons set forth in this Memorandum Opinion, this Court will affirm in part, and vacate and remand in part, the Bankruptcy Court's Order.

## I. BACKGROUND

In December, 1984, Donald O. Reynolds ("Debtor" or "Appellee") and Patricia Reynolds (collectively, the "Reynolds"), purchased a home located at 84 Deerhaven Road, Mahwah, New Jersey ("Property"). *In re Donald O. Reynolds*, Civ. No. 94–3329TF, at 2 (Bankr.D.N.J. Aug. 18, 1995) (KCF) ("Bankr. Op."). At that time, they hired Sherlock Home Inspectors, Inc. to inspect the Property. *Id.* The inspection report revealed no structural defects, and the Reynolds relied on the report when they purchased the Property. *Id.* The Reynolds were divorced on February 13, 1990 and, as part of the divorce proceeding, the Superior Court Judge ordered Joel Reinfeld, Patricia Reynolds' attorney in the divorce, to act as the attorney-in-fact for the sale of the Property. *Id.*

In July, 1991, Reinfeld received two offers on the Property, one from the Tuttles and the other from the Starrs. *Id.* at 2–3. Because the Tuttle offer was slightly higher, however, Reinfeld executed a contract of sale with the Tuttles on July 28, 1991. *Id.* at 3. The Tuttles hired Gerry Guilfoyle, President of Guardian Homes, to conduct a home inspection of the Property. *Id.* According to Guilfoyle, he advised the Debtor that the house had structural defects. *Id.* While the Debtor conceded that he was informed by Guilfoyle that some parts of the house evidenced poor workmanship, he denied he was ever told that there were any structural defects in the house. *Id.* In either event, Mr. Guilfoyle never prepared a written report for the Tuttles or served the Reynolds with any sort of written inspection report. *Id.* Based on the home inspection, the Tuttles withdrew their offer. *Id.*

Although Reinfeld informed the Starrs that the Tuttles' offer had been withdrawn due to problems with the inspection, the Starrs and Reinfeld executed a contract of sale on August 13, 1991. *Id.* As a condition of entering into the contract with Reinfeld, the Starrs requested that the Debtor execute a Property History Form. *Id.* at 3–4. The Debtor completed and signed a Property History Form in which, *inter alia*, he indicated that he was not aware of any condition or information regarding the Property that might affect its value or use. *Id.* at 4. The Property History Form also contained a disclaimer, which stated in bold letters that

THIS PROPERTY IS BASED ON MY LAYMAN'S OBSERVATION AND IS NOT A WARRANTY OF ANY KIND BY MYSELF OR MY AGENT AND IS NOT A SUBSTITUTE FOR EXPERT INSPECTIONS THAT THE BUYER MAY WISH TO OBTAIN

*Id.*

On August 21, 1991, Joseph Agner, d/b/a Executive Home Consultants, inspected the home for the Starrs. *Id.* Agner's inspection report, which was forwarded to Reinfeld on August 26, 1991, revealed the need for certain minor repairs to the porch, attic ladder, and certain areas of dry wall, but made no mention of structural defects. *Id.* Subsequently, on December 9, 1991, the parties

went forward with the closing on the Property. *Id.*

Shortly after the closing, however, the Starrs became aware of various structural defects in the Property. *Id.* Subsequently, on June 12, 1992, the Starrs filed a state court complaint against the Debtor, Reinfeld, Agner, and the selling agents. *Id.* at 5; *In re Donald O. Reynolds,* Civ. No. 94–31132 (Bankr.D.N.J. July 5, 1995) (KCF) ("Hearing Tr.") at 35. After commencement of the state court action, Guilfoyle provided the Starrs with a letter dated May 1, 1992, which contained his recollections of the home inspection he conducted on behalf of the Tuttles. Bankr.Op. at 5; Hearing Tr. at 16. The letter pointed out specific problems with the Property, and concluded that the construction was clearly sub-standard. Bankr. Op. at 5. However, the letter did not use the word "severe" or the phrase "structural defects". *Id.*

On February 25, 1994, Reynolds filed a voluntary petition for relief with the United States Bankruptcy Court for the District of New Jersey pursuant to Chapter 7 of the Bankruptcy Code. *Id.* The Bankruptcy Court granted the Debtor a discharge on August 22, 1994, and the Starrs commenced this adversary proceeding on July 11, 1994, wherein they sought to except the Starrs' claim from the Debtor's discharge based on 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). *Id.*

On August 18, 1995, the Bankruptcy Court issued a Memorandum Opinion which concluded that the Starrs had not met their burden of proof under sections 523(a)(2)(A) or 523(a)(6). *Id.* at 11, 13. Subsequently, on September 7, 1995, the Bankruptcy Court entered an Order: (1) dismissing with prejudice the adversary complaint filed against the Debtor; (2) entering a nondischargeable damage award in the amount of $250.00 against the Debtor in favor of the Starrs (without a finding of fraud or misrepresentation); and (3) discharging the Starrs' claims against the Reynolds' estate arising from the Starrs' purchase of the Property. *See* Order on Memorandum Opinion Entered on August 18, 1995 and For Other Related Relief, annexed to Appellants' Designation of Items for Record on Appeal, as Exh. 12. On September 12, 1995, Appellants filed a Notice of Appeal and, thereafter, filed Appellants' Designation of Items for Record on Appeal and Appellants' Statement of Issues Presented on Appeal.

In the present matter, Appellants present the following issues on appeal in their brief:

(1) Whether the Bankruptcy Court erred when it failed to find that [Appellee] committed actual fraud when he knowingly misrepresented the condition of the Property to the [Appellants] and when he wrongfully concealed material, latent defects he knew to exist in the House from the [Appellants].

(2) Whether the Bankruptcy Court abused its discretion when it failed to qualify the [Appellant's] real estate appraiser as an expert qualified to testify as to the value of the Property on the date of the transfer from [Appellee] to the [Appellants] taking into consideration the existence of the structural defects.

Appellants' Brief at 2.

## II. DISCUSSION

### A. STANDARD OF REVIEW

 Bankruptcy Rule 8013 provides in pertinent part: "On an appeal the district court … may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact will be upheld unless clearly erroneous." 11 U.S.C.A. Rule 8013 (West Supp.1995); *Resyn Corp. v. United States,* 851 F.2d 660, 664 (3d Cir.1988). In defining the term "clearly erroneous" the United States Supreme Court has stated that "[a] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conclusion that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). A bankruptcy court's conclusions of law are subject to plenary review. *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988). Where mixed questions of law and fact are presented, the appropriate standard must be applied to each component. *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir.1989).

## B. DISCHARGEABILITY

 The overriding purpose of the Bankruptcy Code "is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start." *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir.1995). But this policy of a fresh start is not unrestricted:

> [I]n the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor."

*Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quotation omitted). Consequently, pursuant to code section 524, the debtor is released from personal liability on discharged debts. *In re Poskanzer*, 143 B.R. 991, 998 (Bankr.D.N.J. 1992) (citation omitted). However, in an effort "to discourage fraudulent conduct and to ensure that relief intended for honest debtors does not inure to the benefit of the dishonest", Congress adopted 11 U.S.C. § 523. *In re Hunter*, 771 F.2d 1126, 1130 (8th Cir.1985) (quotation omitted).

In the present matter, Appellants have sought to have their claims determined to be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). Section 523 states in pertinent part:

> (a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—
>
> * * * * * *
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition;
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. §§ 523(a)(2)(A) and (a)(6).

### 1. *Analysis Under Section 523(a)(2)(A)*

 To have a valid claim under § 523(a)(2)(A), a creditor must prove that there was actual fraud. In order to prove actual fraud, the creditor must show that the debtor either made a misrepresentation or did an act which was wrong. The proofs must show that the debtor knew it was wrong, that she intended to creditor to rely on the act or misrepresentation and that the creditor did, in fact, rely on such act or misrepresentation and, finally, that the creditor was damaged thereby.

*Matter of Knapp*, 137 B.R. 582, 586 (Bankr. D.N.J.1992); *see also In re Dinter*, 1993 WL 484201, at *5 (D.N.J. Nov. 19, 1993), *aff'd* 31 F.3d 1171 (3d Cir.1994). Creditors bear the burden of proof, Bankr.R. 4005, and must prove each element of their claim by a preponderance of evidence. *Grogan*, 498 U.S. at 287–88, 111 S.Ct. at 659–60. Moreover, creditors must show that they justifiably relied on the debtor's representations. *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 438, 133 L.Ed.2d 351 (1995).

In the present matter, Appellants contend that the Bankruptcy Court erred in its § 523(a)(2)(A) analysis: (1) as a matter of fact by finding that Appellants failed to demonstrate that the Debtor intended that the Starrs rely on his misrepresentations to their detriment; (2) as a matter of law when it applied a reasonable reliance standard, rather than the justifiable reliance standard; and (3) as a matter of law when it failed to consider whether the Debtor knowingly concealed material facts. These arguments will be addressed seriatim.

### a. *Proof of Intent*

 Because direct proof of intent (*i.e.*, the debtor's state of mind) is "nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987) (citations omitted). "When the creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor 'cannot overcome [that] inference with an unsupported assertion of honest intent.'" *Id.* (quotation omitted). The focus is, then, on whether "the debtor's actions 'appear so

inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor.'" *Id.* (quotation omitted).

In the present matter, Appellants contend that the Debtor's alleged fraudulent acts were undertaken with the intent to deceive the Starrs. Appellants' Brief at 23. Specifically, Appellants allege that since the Debtor knew the Property had structural defects, it is permissible to infer that the Debtor intended to deceive the Starrs because the Property History Form indicated that the Debtor was not aware of any condition or information regarding the Property that might affect its value or use. *Id.* at 24. Moreover, Appellants assert that in *Petrillo v. Bachenberg,* 139 N.J. 472, 655 A.2d 1354 (1995), the New Jersey Supreme Court "recently held that the objective purpose of a disclosure document, such as the Property History Form, prepared in connection with a real estate transaction, is to induce potential purchasers to rely upon the characterization of the property made therein." *Id.*

■ Appellants' contentions are neither supported in fact nor in law. The Property History Form clearly states that it is based on a layman's observation and that it is *not* a substitute for any expert inspection that the buyers may wish to obtain. Moreover, the Contract of Sale that was executed concurrently between Reinfeld and the Starrs contains a provision expressly permitting the purchaser to have an inspection of the premises conducted. For these reasons, the Bankruptcy Court found that "[t]hese documents taken together clearly indicate an anticipation if not a desire on the part of the Debtor that the buyers obtain an independent inspection of the property rather than rely on his representations." Bankr.Op. at 9–10. This Court concludes that the Bankruptcy Court's finding with respect to the Debtor's alleged misrepresentations is amply supported by the record and was not clearly erroneous.

Moreover, Appellants' reliance on *Petrillo* is misplaced. In *Petrillo,* Bruce Herrigel, an attorney, "extracted information from existing percolation-test reports, created the composite report, and [in connection with his client's efforts to sell the property], delivered the report to a real estate broker." *Petrillo,* 139 N.J. at 486, 655 A.2d 1354. On this basis, the *Petrillo* court concluded that

> Herrigel knew, or should have known, that Bachenberg might deliver it to a prospective purchaser, such as Petrillo. Herrigel did nothing to restrict a prospective purchaser's foreseeable use of the report. In neither the report, a covering letter, nor a disclaimer did Herrigel even hint that the report was anything but complete and accurate.

\* \* \* \* \* \*

> By providing the composite report to Bachenberg [the real estate broker] and subsequently representing him in the sale, Herrigel assumed a duty to Petrillo to provide reliable information regarding the percolation tests.... Because Herrigel did nothing to limit the objective purpose of the composite report, he should have foreseen that Petrillo, as a prospective purchaser, would rely on the facts set forth in the report.

*Id.* at 486–87, 655 A.2d 1354. On this basis, the New Jersey Supreme Court held that, under the circumstances alleged by Petrillo, the attorney assumed a duty to the purchaser to provide reliable information regarding the percolation tests. *Id.* at 487, 655 A.2d 1354. Notably absent from the court's decision, however, is any suggestion that buyers are absolutely entitled to rely on all disclosure forms. Indeed, the *Petrillo* court expressly provides that the objective purpose of a report may be limited. *Id.* Accordingly, the Bankruptcy Court did not err by finding that the document in this case was not to be relied on for anything more than a lay opinion.

### b. Justifiable Reliance

Appellant also argues that the Bankruptcy Court incorrectly applied a "reasonable reliance" standard, rather than a "justifiable reliance" standard in its § 523(a)(2)(A) analysis. *See* Appellant's Reply Brief at 8–9. In the recent case of *Field v. Mans,* the United States Supreme Court held that "§ 523(a)(2)(A) requires justifiable, but not

reasonable reliance." —— U.S. at ——, 116 S.Ct. at 446 (citing *In re Vann,* 67 F.3d 277 (11th Cir.1995); *In re Kirsh,* 973 F.2d 1454 (9th Cir.1992)). To constitute justifiable reliance

> "[t]he plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility." This conclusion, however, does not mean that the reliance must be objectively reasonable. "Although the plaintiff's reliance on the misrepresentation must be justifiable, ... this does not mean that his conduct must conform to the standard of the reasonable man." Justifiable reliance is gauged by "an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." Additionally, "[i]t is only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.

*In re Vann,* 67 F.3d at 283 (quotations omitted).

 While Appellants correctly note that the Bankruptcy Court erred by utilizing a reasonable reliance standard in its § 523(a)(2)(A) analysis, this error was harmless because the Bankruptcy Court found that the Debtor did not intend for the Starrs to rely on his representations. Accordingly, this Court will not disturb the Bankruptcy Court's findings with respect to the Debtor's alleged affirmative misrepresentations.

### c. *Knowing Concealment of a Material Fact*

 Finally, Appellants' charge that the Bankruptcy Court failed to make any findings of fact concerning whether the Debtor had actual knowledge of the defects and/or whether the Debtor intentionally concealed this knowledge. It is well established that § 523(a)(2)(A)'s reference to " 'false pretenses, a false representation or actual

fraud,' carry the acquired meaning of terms of art. They are common-law terms, and ... they imply elements that the common law has defined them to include." *Field,* —— U.S. at ——, 116 S.Ct. at 443 (citations omitted); *see id.* at —— n. 9, 116 S.Ct. at 444 n. 9 (citations omitted) ("We construe the terms in § 523(a)(2)(A) to incorporate the general common law of torts, the dominant consensus of common-law jurisdictions, rather than the law of any particular State."); *see also In re Kirsh,* 973 F.2d at 1458 ("If common law is to apply [in § 523(a)(2)(A) cases], it is important to identify the content of that law. We turn to two of the best sources of that law, the well known Prosser and Keeton on the Law of Torts and the Restatement (Second) of Torts.").

 The common law has recognized that the ethics of bargaining among adversaries generally do not require parties to make full disclosure of all relevant facts to a transaction. *See* RESTATEMENT (SECOND) OF TORTS, § 551, cmts. b & k (1977). "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *See Chiarella v. United States,* 445 U.S. 222, 234–35, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980); RESTATEMENT (SECOND) OF TORTS, § 551, cmts. a, b & k. It is well settled that in New Jersey, "a purchaser may establish a common-law claim by showing that the seller's or the broker's nondisclosure of material facts induced the purchaser to buy." *Strawn v. Canuso,* 140 N.J. 43, 61, 657 A.2d 420 (1995); *see also State, Dept. of Environmental Protection v. Ventron Corp.,* 94 N.J. 473, 503, 468 A.2d 150 (1983) (citing *Weintraub v. Krobatsch,* 64 N.J. 445, 455, 317 A.2d 68 (1974); *Berman v. Gurwicz,* 189 N.J.Super. 89, 458 A.2d 1311 (Ch.Div.1981), *aff'd,* 189 N.J.Super. 49, 458 A.2d 1289 (App. Div.), *certif. denied,* 94 N.J. 549, 468 A.2d 197 (1983)) ("[T]he elements necessary to prove fraudulent concealment on the part of a seller in a real estate action are: the deliberate concealment or nondisclosure by the seller of a material fact or defect not readily observable to the purchaser, with the buyer relying upon the seller to his detriment."). Accordingly, this Court finds that under New Jersey law, silence may provide a basis for a

misrepresentation that is actionable under § 523(a)(2)(A). *See In re Van Horne,* 823 F.2d at 1288; *In re Howarter,* 114 B.R. 682, 684–85 n. 2 (9th Cir. BAP 1990); *In re Chryst,* 177 B.R. 486, 493 (Bankr.E.D.Pa. 1994); *In re Reitz,* 134 B.R. 131, 133 (Bankr. D.Del.1991); *In re Piccolomini,* 87 B.R. 385, 387 (Bankr.W.D.Pa.1988); *Matter of Weinstein,* 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983); *see also In re Evans,* 181 B.R. 508, 514 n. 6 (Bankr.S.D.Cal.1995) ("Whatever doubt there may have been prior to the enactment of the Code that fraud may consist of concealment or intentional nondisclosure as well as affirmative misrepresentations of material facts, is clearly dispelled by the addition of the term 'actual fraud' in § 523(a)(2)(A).").

 Unlike instances of affirmative misrepresentation, "where it can be demonstrated that the injured party relied upon affirmative statements, in instances of total non-disclosure . . . it is of course impossible to demonstrate reliance, and resort must perforce be had to materiality, i.e., whether a reasonable man would attach importance to the alleged omissions in determining his course of action." *Titan Group, Inc. v. Faggen,* 513 F.2d 234, 239 (2d Cir.1975); *see also In re Evans,* 181 B.R. at 515 n. 7 ("Reliance is not a factor since it is not possible to rely on facts which have been concealed. 'Materiality rather than reliance thus become the decisive element of causation.' "). Concealed facts are material if "a reasonable man would attach importance to the alleged omissions in determining his course of action." *Titan Group, Inc.,* 513 F.2d at 239.

 Because Appellants could satisfy their burden if they establish, *inter alia,* that: (1) the Debtor knew the Property had structural defects; (2) the Debtor intentionally concealed this information; and (3) a reasonable man would attach importance to the alleged omission in determining his course of action, *see In re George,* 1991 WL 208818, at *5 (Bankr.W.D.Pa. Oct. 8, 1991); *In re Haining,* 119 B.R. 460, 463 (Bankr. D.Del.1990) (citation omitted), this Court finds that the Bankruptcy Court erred as a matter of law by not making such findings. Accordingly, this Court will vacate this part of the Bankruptcy Court's Order and remand

for further proceedings consistent with this Memorandum Opinion.

### 2. Analysis under Section 523(a)(6)

 Appellants also argued before the Bankruptcy Court that their claim was dischargeable under § 523(a)(6). Section 523(a)(6) excepts from discharge "[any debtor] for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "A debtor's actions are willful and malicious within the meaning of § 523(a)(6) where those actions were substantially certain to result in injury or where the debtor desired to cause injury." *In re Conte,* 33 F.3d 303, 308 (3d Cir.1994).

 The Bankruptcy Court found that Appellants failed to establish that their claim against the Debtor was nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Specifically, the Bankruptcy Court noted that

[b]ased on the plaintiff's own testimony, it is clear that the Property History Form only induced the Starrs to take the additional step of hiring a home inspector. The Starrs did not simply take Mr. Reynolds' word for the condition of the property. There is no reason to assume that Mr. Reynolds did not fully expect that the Starrs would hire a home inspector; he and his wife had done so when purchasing the house seven years earlier. The Starrs had done so when they purchased a prior house. Thus, any statements made by Mr. Reynolds could not have been substantially certain to produce harm. Putting aside the state of the debtor's knowledge regarding defects, the debtor's actions did not necessarily lead to the plaintiff's injuries; a faulty home inspection did.

Bankr.Op. at 12–13. However, because Appellants have not raised their § 523(a)(6) claim in either of their briefs, this Court finds that Appellants have abandoned this claim.

### C. EXPERT WITNESS QUALIFICATIONS

Finally, Appellants argue that the Bankruptcy Court erred when it failed to qualify Louis A. Yorey as an expert real estate

appraiser. Consequently, according to Appellants, "Yorey's diminution of value damages, for which Yorey relied on the reports of other experts, was disregarded by the Bankruptcy Court. Yorey's appraisal of the Property was accepted, but not given the weight of an expert appraiser." Appellants' Reply Brief at 11.

Absent an abuse of discretion, this Court will not interfere with the Bankruptcy Court's decision on an expert's competence to testify. *See Knight v. Otis Elevator Co.*, 596 F.2d 84, 87 (3d Cir.1979) (citation omitted). However, we must assess the Bankruptcy Court's ruling "in light of the liberal policy of permitting expert testimony which will 'probably aid' the trier of fact." *Id.* (quotation omitted). Moreover, the Third Circuit has noted that "insistence on a certain kind of degree or background is inconsistent with our jurisprudence in this area. The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 855 (3d Cir.1990).

While the Bankruptcy Court did not question Mr. Yorey's competency to conduct residential appraisals for certain purposes, the judge noted that

> I don't think five [residential appraisals] is enough, regardless of the similarity of the methodology [with commercial appraisals] and regardless of the fact that commercial appraisals may be more complicated. A residential appraiser has to have familiarity with the area, has to have familiarity with the market, has to have familiarity with a number of factors. And despite his fine training, I simply don't think five residential appraisals is enough to qualify him as a residential expert before this Court.
>
> \* \* \* \* \* \*
>
> [U]nder the Federal Rules of Evidence, only an expert can rely on an expert report. And since I've just ruled that he's not qualified as an expert, he has to rely on things of which he has personal knowledge.

[Yorey has] inspected the property. I gather he has looked at public documents to determine comparable sales and things like that. And I think we'll allow his testimony in to that extent.

Hearing Tr. at 18–19.

This Court concludes that the Bankruptcy Court's refusal to qualify Yorey as an expert appraiser was sufficiently supported by the record. Mr. Yorey testified that he had only prepared approximately five residential appraisals. *Id.* at 12. Moreover, Yorey could not describe the locations or types of properties he appraised with any degree of specificity. *Id.* at 15. Accordingly, this Court finds that the Bankruptcy Court's decision not to permit Yorey to testify as an expert was not an abuse of discretion.

### III. CONCLUSION

For the foregoing reasons, the Court will affirm in part, and vacate and remand in part, the Bankruptcy Court's Order of September 7, 1995.